CARTER, next friend, *et al. vs.* DIXON *et al.*

1. The verdict was supported by evidence.
2. The charges complained of in the third, fourth and fifth grounds of the motion for new trial were largely in the language of the Code, and were right.
3. A ground of error that the charge as a whole was illegal, in failing and omitting to state all the issues involved in the case, is too general. Errors should be specified.
4. Though a request may contain a correct abstract proposition of law, yet if it is not based on the evidence, it should be refused.
5. Requests substantially given in the general charge need not be repeated.
(*a.*) That the draughtsman of a will was made the executor, and his relations received a considerable portion of the estate devised, does not raise any presumption of undue influence over the testator, which must be rebutted by proof.
6. A testator may have his preferences, dislikes and animosities toward his heirs, and may be guided by them in the disposition of his estate; still, if he is competent in mind, and makes a will freely and voluntarily, these conditions of mind will not *per se* destroy his testamentary capacity. And though prejudices may be unfounded, still if they are not used to coerce and control his will or impose a fraud upon him, they will not avoid his will.
7. Where the only relevancy of a difficulty is to show the state of feeling between parties, the fact of the difficulty may be admissible but its particulars are not.

(*a.*)  The testimony excluded by the court as complained of in the tenth ground of the motion was irrelevant.

8.  The other grounds of the motion contained no errors, or they were immaterial.

October 3, 1882.

Wills.   Evidence.   Practice in Superior Court.   Practice in Supreme Court.   Before Judge WILLIS.   Webster Superior Court.   April Term, 1882.

J. J. Dixon and G. W. Warren, as executors of J. H. Carter, deceased, propounded his will for probate in solemn form.   After providing for the payment of his debts, the will contained the following provisions:   Item 2 directed certain described land to be sold by his executors.   Item 3 required the sale of testator's personalty by the executors, except certain bedding, and that the proceeds be applied first to putting a wire paling around the graves of himself and wife, and the balance be divided among testator's children named in the will, certain grandchildren representing their deceased grand-parent.   Item 5, $150.00 was left to two of testator's grand-sons.   Item 6, John J. Dixon and G. W. Warren, who were sons-in-law of testator, were appointed trustees for the five minor grand-children of testator, the children of his daughter-in-law, Mrs. Carter.   The trustees were to hold the funds of these grand-children until they arrived at the age of twenty-one, unless their necessities should sooner require payment to them, and the trustees were to be the judges of such necessity.   Item 7, a watch was bequeathed.   Item 8, Dixon and Warren were appointed executors.

Mrs. Emma Carter, on behalf of her five minor children, she being a widow of a deceased son of testator, Mrs. Noel, a daughter of testator, her husband joining with her, and Mrs. Cutts, a grand-daughter of testator, her husband also joining with her, filed a *caveat* to the will.   The grounds of the *caveat* were numerous, but may be reduced to four:   (1.) Imbecility of the testator from

extreme age and decrepitude.   (2.) Undue influence exercised by J. J. Dixon, executor, son-in-law and scrivener of the will, in falsely representing caveator as the enemies of testator, and, by false and fraudulent representations, prejudicing testator's mind.   (3.) Mental delusion and hallucination produced by false representations by Dixon as to caveators, under the influence of which the will was made.   (4.) That the will was unreasonable, unequal, inequitable and unjust.

The evidence was very voluminous.   The propounders proved the execution of the will, and introduced evidence to show that testator's mind was sound, firm and strong, and that he was free from the influence of others or from fraudulent practices.   Caveators introduced a number of witnesses to show that testator was aged and infirm, both in body and mind; that he was easily troubled by small matters, and was morbidly incensed against the caveators, especially Mrs. Carter, on account of certain family difficulties, and certain reports which had come to his ears concerning their statements and conduct; that testator had once or twice named Dixon as his authority for certain of these unkind reports; that, several years before his death, testator made deeds dividing his lands among his children and grandchildren; that possession of the lands was delivered to the donees, but the deeds were held by the testator until his death, when all of them were delivered except those to Mrs. Carter's children and to the mother of Mrs. Cutts, which were burned; that Dixon wrote the will, was present in the house at the time of its execution, lived near the testator prior to the making of the will and with him afterwards until his death, and was frequently with him; that he and Mrs. Carter were not on speaking terms for some time before the will was made. The will devised the land which would have passed under the destroyed deed.   It was not disputed that Mrs. Carter and her children lived on the land, but the extent of he possession was contested.

The jury found in favor of the propounders. The caveators moved for a new trial, on the following among other grounds :

(1,) (2.) Because the verdict was contrary to law and ·evidence.

(3.) Because the court charged as follows : " You have been empanelled to try that case, and·say, from the testimony, what the truth is on that issue—will or no will. Is this paper which is offered for probate the will of Josiah H. Carter? That is the issue, and that is the only issue you are called upon to try and pass upon. You are not there to say whether the paper offered for probate is a just or an unjust will ; whether if you had been placed in similar circumstances, you would have made a similar will. That is not the issue before you. There is but one issue, and that is, is this the will of Josiah H. Carter? A jury has no right to set aside a will because, in their opinion, it is unjust. The only question is, is it his will? If. it is his will, he had a right to make it under the law. That is the only issue before you now."

(4.) Because the court charged as follows : " Influence, to be undue, must amount to moral coercion, must destroy the free agency of the testator and constrain him to do what is against his will, but what he is unable to resist. In other words, it must be the will of the party exercising the influence over him, and not his will. In this case, it is claimed that this is not the will of Josiah Carter, but the will of one Dixon ; that Dixon had such influence over the old man, that it was impossible for him to resist any wish·or desire of Mr. Dixon ; that he exercised that influence over him, and made him make a will that he did not wish to make. If you believe from the testimony that Dixon did exercise such influence over the old man that it was impossible for him to resist his wish or entreaties, and that he made such a will as Dixon wanted, and not such as he wanted, and that he was compelled to make that will against his wishes, then the will would be Dixon's will and not his."

(5.) Because the charge failed to state all the issues involved in the case, and the law applicable to said issues; and because, as applicable to the facts, it was illegal, taken as a whole.

(6.) Because the court refused the following request: "Although a person has a right, and it is lawful for him to move a testator to make him his executor or give him his goods, even when the testator is a person of weak judgment and easy to be persuaded, and the legacy of the propounder or his near relatives considerable, yet, if in such a case a person does so move a testator, a very strong presumption arises that the moving was not right and lawful—a presumption only to be rebutted by that person's bringing forward something sufficient to show the will such as a man of average mind, morals and family love might be willing to make. If you believe that the testator was an aged and feeble man, and that he had previously had testamentary intentions of distributing his property equally, then you can look to the nature of the will to ascertain its reasonableness. The reasonableness or unreasonableness of the will may throw light on the question of imbecility. If you think from the evidence that the weakness of J. H. Carter's mind amounted to imbecility, then the will cannot be set up."

(7.) Because the court refused the following request: "Influence is undue when it is shown that another person has acquired such dominion and influence over the testator's mind as to prevent the exercise of his discretion in disposing of his property by will. A will made by the testator under the influence of such dominion is void. There are some relations in life where a presumption of undue influence arises, such as writer and testator, parent and child, and other fiduciary capacities, particularly when it appears, if it does from the evidence so appear, that the writer was made executor and his near relations received a considerable portion of the estate devised. This presumption must be rebutted by proof, if you believe the evidence establishes these facts."

(8.) Because the court refused the following request: "A person may be sane on all subjects except one, and except as to this one subject possessed of ample capacity; yet if he make the will under a delusion as to the special matter, he is not sane as to this, and such a will should not be set up. If you believe from the evidence that J. H. Carter at the time of the making of the will believed in the existence of facts which had no existence, and refused to disbelieve them upon clear proof, and acted upon them as true, then he was under a mental delusion, and if the will is the result of this delusion it is void and cannot be set up."

(9.) Because the court refused the following request: "If the testator be partially deranged, either as to the legatees or subject matter of his will he will be considered as wanting sound and disposing mind and memory as it respects this particular will, however unimpeachable his character and capacity in other respects."

(10.) Because the court refused to allow caveators to prove by one Davis declarations of testator made in 1878, 1879 and 1880, to the effect that testator had moved Mrs. Carter from her place in Hardmoney to the place where she lived at the time of his death, and had given it to her; that he wanted to get her nearer to him, in order that she might rent out her place in Hardmoney.

The motion was overruled, and the caveators excepted.

FORT & SIMMONS, for plaintiffs in error.

J. B. HUDSON; THOMAS J. PICKETT; B. B. HINTON; HAWKINS & HAWKINS, for defendants.

SPEER, Justice.

This writ of error brings to us for review certain errors complained of in a motion for new trial, which was refused in the court below. The issue there was the propounding

of a paper for probate, which the jury sustained as the last will and testament of Josiah H. Carter, deceased.

1. The first and second grounds of the motion we deem it unnecessary to consider, under the abundant evidence this record affords in support of the verdict.

2. We think the charge of the court complained of, as set forth in the third, fourth and fifth grounds, was correct, being given largely in the language of the Code itself, and the issues presented by the court covered all that there was evidence to support.

3. The fifth ground of error is, " because the charge, as a whole, was illegal, in failing and omitting to state all the issues involved in said case, and the law applicable to said issues." This ground of error is too general and indefinite. The rule of this court requires the plaintiff in error to specify distinctly the points of error in the judgment of the court below. Code, p. 954, Rule 8, §4251. The plaintiff should have stated in his exceptions what issues were omitted, to be charged upon by the court. To require a reviewing court to scan critically an elaborate charge, covering many pages of manuscript, to *search* for errors, which the plaintiff should specify, is not demanded at our hands.

4. The request to charge, asked for as set forth in the sixth ground of the motion, and which was refused, may be, and probably is, correct as an abstract proposition of law, but we see nothing in the evidence in this case which would make it applicable here. In traveling through this voluminous record of evidence we cannot recall a single line showing Dixon, or any one else, " moved " this testator either " to appoint him his executor or give him his goods." On the contrary, the evidence is the reverse. Requests to charge must be based upon evidence in the case on trial, and not on pleadings or theories that exist alone in the minds of disappointed suitors.

5. A part of the request to charge, as asked for, and complained of, as refused in the seventh ground, that is

the part that refers to undue influence, was given substantially by the court in his general charge, and need not have been repeated. But the latter clause of said request we think was error, as expressed in these words, and was properly refused : " There are some relations in life where a *presumption* of undue influence arises, such as writer and testator, parent and child, and other fiduciary capacities—particularly when it appears, if it does from the evidence so appear, that the writer was made the executor and his relations received a considerable portion of the estate devised ; this presumption must be rebutted by proof, if you believe the evidence establishes these facts." Is it a presumption of law that one who writes a will, and is nominated executor, and his family are beneficiaries under it, that by so doing, as the draughtsman, that he exercises an *undue influence* over the testator, and it must be rebutted by proof in order to set up the will ? We cannot subscribe to such a rule. It certainly is legal for a draughtsman to write the will of a testator and be the nominated executor, and for his family to be beneficiaries under it ; and, if this is legal, does the law pronounce such an act *presumptive* evidence of *undue* influence, which must be rebutted by proof? We think not, and the court was right in refusing this request. Undue influence is an issue that must be established by proof ; it must, in order of itself to vitiate a will, go to the extent of substituting the will of the one charged with such conduct in place of the will of the testator ; the proof must show the undue influence to amount "to moral coercion."

6. The requests to charge, the refusal of which are set forth in the eighth, ninth and tenth grounds of the motion, may be considered together, as they involve the question of the capacity of a testator who is a monomaniac and one who executes a will under a delusion, under the belief that certain facts are true when they did not exist, and also the law of partial derangement. These requests were refused, and error is assigned thereon.

Carter, next friend, *et al. vs.* Dixon *et al.*

Without determining the question whether these charges enunciated correct legal propositions, we can only say we find no evidence in the record on which to base them. The evidence shows Mrs. M. R. Carter, the widow of testator's son, was at one time a favorite with the testator, and that subsequently, owing to certain family troubles and rumors, a coolness and alienation ensued, and it was alleged that Dixon, the son-in-law of testator, took advantage of these circumstances to prejudice the mind of testator against her and her children, and this led to a delusion, under the influence of which testator made his will when he did not have testamentary capacity as to this branch of his family.  But, admitting all that has been proved of the alienation of testator, we can find no evidence that Dixon used these rumors to the prejudice of Mrs. Carter and her children in the execution of this will.  A testator may entertain his animosities, cherish his prejudices, and nurse his wrath against heirs at law of his estate, and he may be guided and controlled by them in the disposition of his property; still, if he is competent in mind and makes a will freely and voluntarily, these conditions of his mind will not *per se* destroy his testamentary capacity.  And though his prejudices may be unfounded, still, if they are not used to coerce and control his will, or impose a fraud upon him, they are harmless. To make these mental conditions available, it must appear that under their influence he was coerced or fraudulently induced to make a will that would not otherwise have met his approval, by one who used them for that purpose, and thus, by this undue influence or fraudulent conduct, substituting his own wishes as a will for the testator.  It is not lawful for one fraudulently and falsely to bring such influences to bear upon the mind of a testator, to act thus upon his prejudices, animosities, fears, sympathies or affections, and thus induce him to make a will that was not his own voluntary act, and so the court instructed the jury that such a will would be void.  But this record discloses no such conduct or action to the extent declared.

Carter, next friend, *et al. vs.* Dixon.

There is no evidence that this will was the offspring of a delusion. The testator may have entertained unfounded prejudices against Mrs. Carter and her children, still if they were not fraudulently used to acquire dominion over him, and thus make a will for him, they would not affect his capacity to dispose of his property. Some writers contend that delusion is one of the tests of insanity and is evidence thereof, but the evidence discloses no such state of mind in testator in the execution of this paper. We have to deal with the human mind and heart as we find them. They are liable to indulge in prejudices and partialities—prone to condemn, and, unhappily, less prone to forgive. But unless these evil thoughts and emotions are made the manacles to bind the will of the testator and deliver it helplessly to the dominion of another, or they are used fraudulently to deceive and procure a will made by reason of such influences, testamentary capacity still exists so long as the mind is sound and the will is free.

7. We cannot see the relevancy of the testimony excluded by the court as complained of in the tenth ground of the motion, and there was no error in doing so. Neither was there error in refusing to allow the witness, Mrs. Carter, to go into the details and circumstances of the difficulty between Dixon and her brother. The fact of the difficulty was only competent to show the state of feeling, and this was proved by the testimony already in, without the particulars.

We find no error in the remaining grounds of the motion for a new trial, or they are so immaterial as not to affect the merits of the case, or to unsettle a verdict which is abundantly supported by the law and facts on the true issues involved.

Judgment affirmed.