22881. WHITE et al. v. IRWIN, Executor.

ARGUED MARCH 8, 1965—DECIDED APRIL 8, 1965—REHEARING DENIED APRIL 20, 1965.

*Emmett O. Dobbs, Jr., Paul L. Lindsay, Jr.,* for plaintiffs in error.

*Max D. Kaley, Irwin, Anderson & Smith, Wotton, Long, Jones & Read,* contra.

GRICE, Justice. Caveators assign error upon the denial of their motion for new trial following the probate of a will and codicil.

The case arose when R. Beverly Irwin filed in the Court of Ordinary of Cobb County a petition to probate in solemn form the will and codicil of his aunt, Miss Mary Anne Irwin, who died on August 8, 1963. In the will, dated August 28, 1957, the propounder was the remainderman of all unconsumed property, and in the codicil of March 30, 1961, he was the sole

beneficiary of the property embraced thereby. In both documents the propounder was named executor.

Caveats were interposed by Mrs. Mildred Irwin White, William A. Irwin and Bayard M. Irwin, who were sister and brothers of the propounder. Grounds of their caveat were lack of testamentary capacity, undue influence, improper execution, denial of execution, and false representations. The court of ordinary found in favor of the propounder and admitted the will and codicil to probate. Thereupon, the caveators appealed to the superior court of that county.

Upon conclusion of the evidence in the superior court, the judge directed a verdict in favor of the propounder and entered judgment accordingly.

Error is assigned upon the denial of the caveators' amended motion for new trial. In addition to the general grounds, it complains that several specified matters were questions of fact which should have been submitted to the jury, instead of being withdrawn by direction of verdict. These matters were the testatrix' alleged lack of knowledge of the contents of both the 1957 will and the 1961 codicil, undue influence exerted upon her by the propounder as to both of these instruments, and improper execution of the codicil in that the testatrix did not sign in the presence of one of the subscribing witnesses. Also, complaint is made of the refusal to permit caveators to cross examine the propounder as to a certain check of the testatrix.

■ As to the testamentary capacity of the testatrix, the evidence showed, without conflict, that she was in complete possession of her mental faculties when she executed both the will and the codicil and that she continued so until about eleven months after signing the codicil; that, although 82 years of age when making the will and 86 when adding the codicil, she was in good physical health except for increasing arthritis; that notwithstanding her age and this physical impairment she continued to handle practically all of her affairs until a few months before her death; and that throughout her life she was a determined and strong willed person. The evidence provided no support whatever to the caveat based upon lack of testamentary capacity.

■ Caveators deny the testatrix' execution of the will and

codicil in several particulars. However, the only one relied upon in their amended motion for new trial or in this court is their contention that she had no knowledge of the contents of either instrument. They assert that since the propounder prepared these documents, and was the principal beneficiary in the will and the sole beneficiary in the codicil, strict proof was necessary to show that the testatrix knew the contents of each. They insist that there was evidence that she did not have such knowledge.

The caveators base these contentions upon *Code* § 113-305, which provides as follows: "In all cases, a knowledge of the contents of the paper by the testator shall be necessary to its validity; but usually, where a testator can read and write, his signature, or the acknowledgment of his signature, shall be sufficient. If, however, the scrivener or his immediate relations are large beneficiaries under the will, greater proof shall be necessary to show a knowledge of the contents by the testator."

(a) Insofar as the 1957 will is concerned, the caveators insist that here, where the propounder was the scrivener and a large beneficiary, certain events at its execution and certain declarations made subsequently created an issue of fact for the jury as to whether the testatrix had knowledge of its contents.

They point to the testimony of the attesting witnesses that the propounder brought the testatrix to their store for them to witness her execution of the will, and that there was no discussion of the document by the testatrix or anyone else except the statements that they were witnessing her signature for her will and that it was her will.

However, the evidence as to events leading up to such execution was that the testatrix, approximately a month previously, had asked the propounder to prepare a will in accordance with wishes she expressed to him, that she told him what she desired in it and gave him memoranda, that he put in the document exactly what she wanted and read it to her, and that she then locked it in her trunk and read it several times before executing it.

The foregoing evidence as to the preparation and execution of this instrument demanded a finding that the requirement of *Code* § 113-305 was met. As stated in *Whitfield v. Pitts*, 205 Ga. 259, 270 (53 SE 549), "The greater proof, which is necessary where

immediate relations are large beneficiaries, does not require that the evidence shall be conclusive but will be sufficient if strong." In the instant case, as in that one, "There was no evidence that the testatrix did not know the contents of the will, and the above-stated testimony establishes that she did." Also, the facts here are as strong, or even stronger, than those in the following cases, where this court held a finding of compliance with *Code* § 113-305, supra, to be demanded. See *Cook v. Washington,* 166 Ga. 329 (2) (143 SE 409); *Whitfield v. Pitts,* 205 Ga. 259, 270, supra.

A different result is not required because of declarations made by the testatrix *subsequent* to the execution of the will, that she had no will, that she was going to make her will, and that all of her near relatives would be remembered in it. *Code* § 113-305, supra, requires that a testator have knowledge of the contents of the will at the time of execution, not that he recall the contents at some subsequent time. If the latter were required no validly executed will would be secure against failure of memory or mental aberration which so often result as time goes by. The rule is well established that "Declarations of the testator, whether made at the time of or after the execution of the will, are not admissible to impeach or revoke the will unless connected with an act of revocation, as a will can not be revoked by parol declaration." Redfearn, Wills and Administration of Estates in Georgia, p. 64. This court has held that declarations made by a testator after the execution of the will to the effect that he had not made a will, and that if he had signed a paper purporting to be one, he did not know what he was doing, were not evidence of the truth of the facts so stated. *Credille v. Credille,* 123 Ga. 673 (3) (51 SE 628, 107 ASR 157) (one Justice absent); *Purser v. McNair,* 153 Ga. 405 (1) (112 SE 648); *Pennington v. Perry,* 156 Ga. 103 (4) (118 SE 710). In the instant case such declarations of the testatrix were not evidence of lack of knowledge of the contents of the will at the time of its execution.

Likewise, the 1962 statements attributed to the propounder that he had not been able to get the testatrix to make a will and that there was no official will, were not evidence that she lacked knowledge of the contents of the will at the time she executed it in 1957.

Therefore, those portions of grounds 4, 5 and 6 asserting the testatrix' lack of knowledge of the contents of the will are not meritorious.

(b)   The contention that the testatrix did not have knowledge of the contents of the 1961 codicil is essentially the same as that made as to the will.

Here, too, the caveators rely upon *Code* § 113-305, supra. They point to the testimony of the subscribing witnesses that the contents of the codicil were not mentioned or read when it was executed, that the propounder merely told the testatrix that "these are the papers that I talked with you about," that no mention was made as to what the document was, and that it was executed at the same time she signed other papers.   The caveators contend that under these circumstances, the "greater proof" required by *Code* § 113-305, supra, was lacking, and hence there was an issue of fact for the jury.

However, the evidence was undisputed that the codicil, as executed, contained a certain bequest to the propounder which was in keeping with the intention which the testatrix had shortly before expressed to her brother.   Also, unchallenged was the evidence of events leading up to execution, as follows: that the propounder prepared the codicil; that about a week before its execution he either showed or read it to the testatrix; that on the day of its execution he talked with her about executing it; and that at its execution everyone was sitting around the table, saw each other sign it and knew exactly what was going on. There was no evidence that she did not know the contents of the codicil when she signed it.

The authorities cited in subdivision (a) as to what must be shown for compliance with *Code* § 113-305, supra, control here. The evidence as to execution of the codicil demanded a finding of the required knowledge of contents by the testatrix.

Accordingly, those parts of grounds 4, 5 and 6 asserting that lack of such knowledge created a jury issue are without merit.

■   We next consider the contention that there was evidence of undue influence of the testatrix by the propounder when she executed the will on August 28, 1957, and the codicil on March 30, 1961, and, therefore, that the trial court should have submitted

that issue to the jury insofar as each of these instruments was concerned.

The caveators stress the following evidence: that the propounder was the nephew of the testatrix; that he was an attorney at law who prepared deeds, bank accounts and other matters pertaining to her financial and business affairs; that he prepared the will and codicil; that he was the principal beneficiary in the former and the sole beneficiary in the latter and was named executor in both; that he arranged for the presence of the witnesses and the execution of these instruments; and that he was present at their execution but made no statement as to their contents. Caveators contend that this evidence showed that the propounder stood in a confidential relationship with the testatrix and was active in procuring the execution of her will and codicil, and, therefore, that there is a presumption of undue influence, creating a jury question.

Since there is some difference between the will and codicil insofar as the evidence is concerned, we shall treat the two documents separately in the light of the above contentions.

(a) As we survey the evidence, there was none which created an issue for the jury as to undue influence insofar as the will is concerned.

This court has made it plain that, "While undue influence may be proved by circumstances, merely to show an opportunity to exert it by one who occupies a confidential relation to the alleged testator, and who receives a substantial benefit under the instrument sought to be propounded, is not sufficient to prove it." *Brumbelow v. Hopkins,* 197 Ga. 247 (3) (29 SE2d 42).

Also, the authorities are uniform that no such presumption arises merely because one occupying a confidential relationship with the testator drafts, or causes another to draft, a will in which he is named executor and is made a large beneficiary.

In *Carter v. Dixon,* 69 Ga. 82, 89, after disapproving of a request to charge that a presumption of undue influence arose, this court said, "It certainly is legal for a draughtsman to write the will of a testator and be the nominated executor, and for his family to be beneficiaries under it; and, if this is legal, does the law pronounce such an act *presumptive* evidence of *undue* influ-

ence, which must be rebutted by proof? We think not, and the court was right in refusing this request. Undue influence is an issue that must be established by proof. . ."

In *Marlin v. Hill*, 192 Ga. 434, 439 (15 SE2d 473), a caveat was held subject to general demurrer. There, the will of an elderly lady had left practically all of her property to the propounder and had named him executor. This court declared: "The fact that [the propounder] may have occupied a confidential relation to [the testatrix] does not, without more, argue that her will was invalid on the ground of fraud or undue influence. Nor could it be treated as invalid because in consequence of such relationship he may have employed an attorney to draw the will, furnished information as to what it should contain, and finally kept it in a safety-deposit box, without divulging its contents. The will having been solemnly executed in form of law, presumably the information so furnished was transmitted from the testatrix. . . While confidential relation might be an important circumstance to support a charge of fraud or undue influence, a person occupying such relation would not be prevented from exercising any influence whatever to obtain a benefit to himself, and the relationship alone would not afford a substitute for allegations of fact touching fraud or undue influence."

Also, in 57 Am. Jur. 283, Wills, § 391, is this particularly significant statement: "The activity on the part of the beneficiary in the preparation and execution of a will which will cast the burden of proof upon the proponent of the will to show absence of undue influence must be more than activity and interest referable solely to a compliance with or obedience to the free agency and voluntary instructions or directions of the testator. A presumption of undue influence does not arise from the preparation of the will by the beneficiary where it appears that he acted at the *request of the testator*." (Emphasis ours.)

Here, the undisputed evidence was that the only activity by the propounder was in response to the request of the testatrix. Nothing appears as to any suggestion or instigation on his part in the making of the will, or as to his taking undue advantage of his relationship with the testatrix.

That there was a discussion among the members of the older

generation even before the death of the propounder's father and they agreed that the Homeplace should vest in "[the propounder] after that generation passed on," was not, by its very nature, undue influence by him.

Other testimony, relied upon by the caveators, that the testatrix stated in the fall of 1957, after the date of the will, that "she was going to make her will"; and in 1962 that she "had never signed one," "did not have one," and that the propounder told her she had to leave everything to him because he was the oldest, was not proof of undue influence itself, but was admissible only to show whether undue influence, *otherwise established,* affected the mind of the testatrix. *Mallery v. Young,* 94 Ga. 804, 807 (22 SE 142); *Jones v. Grogan,* 98 Ga. 552, 557 (25 SE 590); *Credille v. Credille,* 123 Ga. 673 (3), 676, supra; *Purser v. McNair,* 153 Ga. 405 (1), 410, supra; *Pitman v. Oliver,* 184 Ga. 840 (2) (193 SE 884).

In view of the foregoing, the position taken in grounds 4, 5 and 6 as to undue influence insofar as the will is concerned, is not maintainable.

(b) We deal next with the contention that there was evidence of undue influence as to the codicil.

The factual situation in this phase with reference to the propounder's confidential relationship, drafting of the document, and being named executor and sole beneficiary is quite similar to that as to the will. However, here there was no testimony to show whether or not the testatrix requested him to draft the codicil.

But, as stated in Division 3(a), undue influence is not presumed from the mere existence of a confidential relationship. The caveators failed to show that the propounder instigated the making of the codicil or to show any other facts sufficient to raise a presumption of undue influence.

Undue influence as to the codicil was not shown, as contended by the caveators, by the propounder's statement, shortly after the death of the testatrix, that he had a will to offer for probate, without making mention of a codicil.

Therefore, in accordance with the principles and authorities set forth in Division 3(a), which are controlling here also, no

issue of undue influence was raised as to the codicil. Therefore, the parts of grounds 4, 5 and 6 asserting the contrary are not meritorious.

■ We deal now with the contention that there was evidence that the codicil was not signed by the testatrix in the presence of a named subscribing witness, and that this raised an issue of improper execution for the jury.

This contention, as we assess it, is not maintainable. Regardless of whether the testimony, properly construed, showed that this named witness was present, the undisputed testimony showed that two other witnesses *were* present when the testatrix signed. The codicil was executed *after* passage of Georgia Laws 1958, pages 657, 658, which reduced the required number of subscribing witnesses from three to two. A proper attestation clause was incorporated in this codicil, which was introduced in evidence, and no attack was made upon the execution insofar as the other two witnesses were concerned. Thus, the execution was unquestionably valid, leaving no issue of fact for the jury. Compare *Thornton v. Hulme,* 218 Ga. 480 (128 SE2d 744). Ground 6 was properly overruled.

■ No evidence whatsoever was adduced as to any false representations made by the propounder to the testatrix and therefore no issue of fact for the jury was created.

■ The remaining complaint is that the trial court refused to permit caveators to cross examine the propounder as to a check of the testatrix dated March 1, 1962. The subject matter of this questioning was not relevant. The will and codicil had been executed long before, so the check could have no materiality upon the questions then before the court. There was no issue as to signature. Therefore, we regard this complaint as not valid and ground 7 as properly overruled.

■ The evidence demanded the verdict which was directed, and therefore the general grounds of the motion for new trial were correctly overruled.

Since none of the grounds of the amended motion are deemed meritorious, the judgment denying such motion is

*Affirmed. All the Justices concur.*