41096. JOHNSON v. FIRST NATIONAL BANK OF ROME, GEORGIA et al.

(319 SE2d 440)

SMITH, Justice.

Mr. Hugh Johnson, Jr. sued Mrs. Martha Johnson Miller and the First National Bank of Rome, co-executors of his father's estate, for an accounting, punitive damages, and attorney fees. At the close of the plaintiff's evidence, the trial judge directed a verdict for the defendants. Based on the following facts, which all parties have adopted, we reverse.

Mr. Hugh Johnson, Sr., father of the plaintiff and Mrs. Miller, opened a checking account at First National on November 23, 1973. On July 19, 1974, the checking account was changed to a joint account in the names of Mrs. Miller and Mr. Johnson, Sr. On November 10, 1975, Mr. Johnson, Sr. bought a certificate of deposit worth $46,313.22 from First National.

Mr. Johnson, Sr. suffered a stroke on April 24, 1976. He was 85 years old at the time. He subsequently executed a general power of attorney, naming Mrs. Miller as his attorney-in-fact.[1]

When the certificate matured, on November 15, 1979, Mrs. Miller endorsed it as her father's attorney-in-fact and deposited it in the joint account. She then had four joint certificates, with a face value of $10,000 each, issued to "Mr. Hugh T. Johnson or Martha Elizabeth Miller." The certificates provided each party with the right of survivorship.

When these certificates matured, Mrs. Miller cashed them and bought three more joint certificates worth $35,000 total. She deposited the remaining $5,000 in the joint account. Six days later, on May 19, 1980, Mrs. Miller withdrew $5,000 from the joint account and deposited the money in her personal account in Atlanta.

In November 1980, the three most recent certificates matured, and Mrs. Miller cashed them. One month later, she bought three more joint certificates worth $30,000 total. These certificates also provided for the right of survivorship. She then deposited $5,000 into the joint checking account.

On April 10, 1981, Mr. Johnson, Sr. died. Mrs. Miller and First National qualified as co-executors under his will on May 18, 1981. Later that day, the bank reissued the three certificates of deposit in Mrs. Miller's name alone. The amount remaining in the original joint checking account, $235.03, was turned over to the estate.

1. Mr. Johnson, Jr. contends that the trial court erred in directing a verdict for Mrs. Miller and First National. In reviewing the

---

[1] Unable to write his own name because of physical infirmity, Mr. Johnson, Sr. signed the grant with an "X" mark.

trial court's ruling, we must look at the evidence in the light most favorable to the party opposing the motion for a directed verdict, Mr. Johnson, Jr. We must then determine whether the evidence, so construed, demands a verdict for the movant. *Skelton v. Skelton*, 251 Ga. 631 (308 SE2d 838) (1983). If any conflict of evidence as to any material issue exists, the motion for a directed verdict should be denied. OCGA § 9-11-50.

a. The agreements establishing the joint checking account and the certificates of deposit, we may assume for this appeal only, established the right of survivorship. We must decide on the facts before us, whether, not how, Mrs. Miller might profit from her power of attorney.

Originally, Mrs. Miller had no interest in the funds underlying the $46,313.22 certificate. She acquired the right to draw on the funds and the right of survivorship in the funds when she endorsed the certificate as her father's agent and deposited the proceeds in the joint account. She could only have acquired these rights through the use of her agency.

This court has held that an agent may not profit from the agency to the detriment of the principal. *Harrison v. Harrison*, 214 Ga. 393 (105 SE2d 214) (1958). The increase in Mrs. Miller's Atlanta bank account on May 19, 1980, brought about by the deposit of $5,000 to which she had access only through her acts as an agent, could establish profit by an agent. The corresponding decrease in her father's assets could show injury to the principal.

Mrs. Miller's acquisition of survivorship rights in the three $10,000 certificates could also establish profit by the agent, particularly in light of her subsequent claim of exclusive rights to the certificates. The injury to the principal could lie in the fact that by placing the funds in a joint certificate, Mrs. Miller removed them from her father's testamentary control. As to the certificates and the $5,000 withdrawal, the court could find that Mrs. Miller derived a profit from her fiduciary relationship with her father, to his detriment.

Mrs. Miller claims that even if she did profit to her father's injury, his failure to object ratified her actions. The burden of proof is on the party asserting ratification to show it. *Griggs v. Dodson*, 223 Ga. 164, 171 (154 SE2d 252) (1967). To prove that Mr. Johnson, Sr. ratified her acts by silence or implication, Mrs. Miller must show that her father had knowledge of all material facts relating to the ratification, and that he did not, for an unreasonable time, object to her actions. *Griggs*, supra.

Mrs. Miller has produced no evidence that her father knew of her actions, or that he had sufficient time to repudiate them if he did realize what she had done. The fact that he bought a certificate of deposit in his name solely two years after he set up the joint account

could be seen as evidence that he did not want those funds to be controlled by a condition of survivorship.

The evidence, seen in the light most favorable to Mr. Johnson, Jr., could establish a breach on behalf of Mrs. Miller of her fiduciary duty, and could show that Mr. Johnson, Sr. did not ratify Mrs. Miller's actions. The trial court erred in directing a verdict for Mrs. Miller.

b. As to First National, this court has held that an executor who actively contributes to a devastavit will be held responsible regardless of his intent. "His acts and their effect, not his honest belief, govern the case." *Head v. Bridges,* 67 Ga. 227, 236 (1881). Here, the court must first determine whether there has been a devastavit prior to deciding whether First National contributed to the problem in its executorial capacity. The court erred in directing a verdict for First National.

2. We need not deal with enumerations 2, 3 and 4 as this case will be tried again.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 5, 1984.

*Wright, Morgan & Jones, Clinton J. Morgan,* for appellant.
*Smith, Shaw, Maddox, Davidson & Graham, John M. Graham III, Rogers, Magruder, Hoyt, Sumner & Brinson, Dudley B. Magruder, Carroll G. Jester, Jr.,* for appellees.