A97A1304. BRADSHAW v. McNEILL et al.
(492 SE2d 568)

Judge Harold R. Banke.

Pat McNeill sued Carol Bradshaw alleging fraud and undue influence and seeking to set aside a warranty deed. The trial court denied Bradshaw's motion for summary judgment and motion to file a counterclaim. Bradshaw appeals, enumerating three errors.

This case arose in the wake of Dorothy C. Harris' death. After her husband died in 1984, Harris converted several bank accounts and certificates of deposit she had held with him into joint accounts with McNeill, her niece who lived in Florida. Years later, as Harris' health began to fail, her deceased husband's niece, Carol Bradshaw, assisted her. Harris devised her estate in equal shares to Bradshaw and McNeill.

Just over a month before her death, Harris was hospitalized. After her release, Bradshaw accompanied her to an attorney's office where Harris executed a power of attorney to Bradshaw. A week later, on July 5, 1995, Harris deeded her home to Bradshaw, but reserved a life estate for herself. Again, Bradshaw accompanied Harris to the attorney's office to complete this transaction.

On July 24, 1995, Bradshaw admitted Harris to a local convalescent home. The next day, after examining Harris' will and learning that she and McNeill were to share equally in the estate, Bradshaw used her power of attorney to liquidate all but one of the joint

accounts in Harris' and McNeill's names, which totaled over $70,000.[1] Using those funds, she opened several joint accounts in Harris' and her names. The concomitant penalties on these transactions totaled several hundred dollars. Bradshaw testified that she viewed the funds as a gift although she "probably" knew that McNeill would have received them at Harris' death if the accounts had been left alone. See OCGA § 7-1-813 (a) (sums remaining on deposit at the death of a party to a joint account belong to the surviving party as against the estate absent clear and convincing evidence of contrary intent). Harris died the following day, July 26, 1995.

After learning of the above-mentioned transactions, McNeill commenced this action. Finding disputed issues about Harris' competence during her last month, the trial court denied Bradshaw's motion for summary judgment. It also determined Bradshaw lacked authority under the power of attorney to undertake the transactions regarding the joint accounts. Bradshaw then unsuccessfully sought leave to file a counterclaim, alleging that, if the transactions on the accounts were unlawful, then Harris intended for the funds from the joint accounts to go to her estate. The trial court granted McNeill's motion for judgment on the joint funds, finding Bradshaw had conceded that the joint survivorship rules in the banking code authorized McNeill's right to claim the funds remaining in her name. *Held*:

1. The trial court did not err in denying Bradshaw's motion for summary judgment on the joint account issue. The power of attorney permitted Bradshaw "to close out any checking or savings accounts . . . and to open new checking or savings accounts." Because McNeill did not contribute to the accounts, Harris or Bradshaw, acting for Harris under the power of attorney, was authorized to close out the accounts any time prior to Harris' death. OCGA § 7-1-812 (a) ("A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contribution by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.").

However, the power of attorney also specified that any such activity was to be taken on Harris' behalf. This provision comports with Georgia law, which prohibits agents such as those acting under a power of attorney from benefiting from their position to the principal's detriment. *Johnson v. First Nat. Bank &c.*, 253 Ga. 233, 234 (1) (a) (319 SE2d 440) (1984); see OCGA §§ 10-6-1; 10-6-5. Although Bradshaw had the legal right to open and close the accounts on Harris' behalf, whether Bradshaw was in fact acting on Harris' behalf and whether she exceeded the scope of her authority by retaining the

---

[1] She also learned that she was named executrix. At the time of Bradshaw's deposition, the will had not been probated because Bradshaw "didn't feel like I needed to." Bradshaw was unable to close the one remaining account because not all the checks had cleared.

funds present jury questions, particularly in light of Bradshaw's testimony that she withdrew the funds and created the new accounts to pay for Harris' care in the convalescent home.[2] Further, a jury must resolve the disputed issues of Harris' intent regarding the ownership of the joint accounts and certificates of deposit. OCGA § 7-1-812 (a); see also *Johnson*, 253 Ga. at 234 (1) (a) (the requisite detriment may be established with proof that funds were diverted in a manner which contravenes the principal's intent).

The uncertainty regarding intent distinguishes *LeCraw v. LeCraw*, 261 Ga. 98 (401 SE2d 697) (1991). There, 13 months transpired between the issuance of the power of attorney and the principal's death. The principal was found to be competent during that time and her acquiescence to her agents' actions revealed her intent. Id. at 99. Here, Harris died without an opportunity to ratify or repudiate Bradshaw's actions.

The reach of the trial court's February 7, 1997 order granting McNeill's application for judgment on the funds is unclear. We read it as correctly granting judgment on the sole account remaining in the names of McNeill and Harris. Thus, this division reverses only the findings involving those accounts Bradshaw closed. Because parties may not enlarge their enumerations of error in their briefs, we decline to address Bradshaw's "collateral" argument about McNeill's purported violation of the loyalty rule. *Carroll v. Ralston & Assoc., P.C.*, 224 Ga. App. 862, 865 (481 SE2d 900) (1997).

2. The trial court correctly determined that questions of fact remain to be tried in the action to set aside the warranty deed. The record shows that during the month prior to her death Harris transferred her house to Bradshaw and granted Bradshaw power of attorney. This raised a presumption of undue influence which has not been rebutted. *Parker v. Spurlin*, 227 Ga. 183, 187 (3) (179 SE2d 251) (1971) (a conveyance from the weaker to the dominant party involved in a confidential relationship raises a presumption of undue influence); see *Tingle v. Harvill*, 228 Ga. 332, 339-340 (5) (185 SE2d 539) (1971).

Further, the record includes an affidavit by Sue Whitmire stating Harris was not herself during the final six months of her life and occasionally appeared confused, disoriented, and agitated. Whitmire also attested that Harris would never knowingly have deeded her residence or transferred her accounts to Bradshaw so McNeill's name could be removed from them. This evidence, viewed in the light most favorable to the nonmovant, precluded summary judgment. *Childs v.*

---

[2] We question, however, whether such action was necessary in order to accomplish that goal. See OCGA § 7-1-812 (a).

*Shepard*, 213 Ga. 381, 382 (2) (99 SE2d 129) (1957); compare *White v. Irwin*, 220 Ga. 836, 841 (3) (a) (142 SE2d 255) (1965) (proof of undue influence requires more than the mere opportunity to exert it).

3. The trial court did not abuse its discretion in denying Bradshaw's motion to assert a counterclaim alleging the disputed funds in the joint account belonged to Harris' estate. Bradshaw's right to assert a claim on behalf of Harris' estate did not accrue until her appointment as executrix, which occurred after she moved to file the counterclaim. *Walden v. John D. Archbold Mem. Hosp.*, 197 Ga. App. 275, 277 (2) (398 SE2d 271) (1990) (right of action lies with estate's representative); see *Orange County Trust Co. v. Estate of Takowsky*, 119 Ga. App. 366 (1) (166 SE2d 913) (1969).

This is not to say, however, that the estate is not a proper party, particularly in light of Bradshaw's testimony indicating that unpaid creditors remain. Indeed, we cannot say that all the issues in this case can be completely resolved unless the estate is included as a party. See OCGA § 9-11-13 (f), (h); *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 394 (3) (469 SE2d 469) (1996); see *Edenfield v. Trust Co. Mtg.*, 185 Ga. App. 678, 681 (2) (365 SE2d 520) (1988). However, notwithstanding the parties' arguments to the contrary, that issue is not presently before us.

*Judgment affirmed in part and reversed in part. Johnson and Blackburn, JJ., concur.*

DECIDED OCTOBER 1, 1997.

*Alan W. Connell*, for appellant.
*Mallory & Trice, Truitt A. Mallory*, for appellees.