## S97A0864. CALDWELL et al. v. WALRAVEN et al.

(490 SE2d 384)

SEARS, Justice.

### Summary of the Case

This case raises several issues regarding the property rights of life tenants and remaindermen. This first issue is whether a life tenant who sells property pursuant to a broad power of disposition acquires fee simple title both to the proceeds of that sale and to property subsequently acquired with those proceeds. We conclude that she does not, and hold, as other jurisdictions uniformly have, that the property and proceeds are subject to the life estate and remainders created by the will. The next issue is whether the broad power of disposition granted to the life tenant permits her to dispose of the proceeds of the sale under her will or through the survivorship feature of a joint bank account. Relying on well-established law that a life tenant may only dispose of the property during her life, we hold that the life tenant may not transfer the property after her death by either of the foregoing mechanisms. The final issue is whether the life tenant in this case, who possessed the power to make gifts during her life, made an inter vivos gift of the funds in the joint account. Because the relevant banking statutes raise a presumption that no inter vivos gift is intended by the creation of a joint account, and because no evidence was offered to rebut that presumption in this case, we conclude that the life tenant did not make an inter vivos gift of the funds. For these reasons, we reverse the judgment of the trial court.

### Facts

Hansel and Nell Sloan married in 1936 and lived together as husband and wife until Hansel's death in 1985. The Sloans never had children. Hansel's will provided, in Item III, as follows:

> I give, bequeath and devise to my wife, NELL SLOAN, for and during her natural life, my entire estate, both real, personal, or mixed, of every kind whatsoever or wheresoever situated, with the right to dispose of any or all of said property as she may deem fit or necessary to do.

Additionally, Hansel's will provided that, if any property remained in his estate at Nell's death, it should be divided equally among five people, two of Hansel's nephews, and three of Nell's nieces and nephews.

About nine months before her death, Nell sold property of the estate — the family home — for $180,000. With the proceeds, Nell

purchased a condominium for $72,000, and invested $108,000 in a certificate of deposit. Nell titled the condominium in her name individually, and created the CD as a joint account, with rights of survivorship for her and her niece, Kayanne Walraven, one of the five remaindermen under Hansel's will. Nell died in February 1996, naming the appellee, Kayanne Walraven, as the executrix of her estate. Nell's will contained a devise for the condominium.

In May 1996, the appellants, Calvin Caldwell and Billy Sloan (nephews of Hansel and two of the remaindermen under Hansel's will), filed a petition for accounting and final settlement of Hansel's estate. They contended, among other things, that they were entitled to a pro rata share of the proceeds and property that resulted from the sale of the home. Kayanne Walraven, as the representative for Nell, filed an accounting for Hansel's estate, indicating that no assets were left in the estate, in relevant part, because of the sale of the home. Kayanne contended that the condominium passed under Nell's will. She also contended that the funds in the CD belonged to her either because Nell had made an inter vivos gift of the funds to her, or because she (Kayanne) was the surviving party to the joint account, see OCGA § 7-1-813 (a). The Probate Court of Gordon County transferred the matter to the Superior Court of Gordon County.

The superior court determined that the condominium was an asset of Nell's estate to be passed under her will, and that the funds in the CD "should pass [to Kayanne] in accordance with the laws of this State." Caldwell and Sloan appeal, and for the reasons that follow, we reverse.

## Analysis

1. The parties do not dispute that the broad power of disposal granted to Nell under Hansel's will gave Nell the right to sell the home in which she and Hansel had lived.[1] What is in dispute, however, is whether the proceeds of that sale became Nell's in fee simple or whether they were subject to the same life estate and the same remainders as the home. This issue has been decided adversely to the appellee, both in this jurisdiction and others.

Under Georgia law, "[u]nless otherwise provided, the proceeds of an authorized sale by the life tenant stand in place of the property sold, subject to the same life estate [including the same power of dis-

---

[1] *Shields v. Shields*, 264 Ga. 559, 561 (448 SE2d 436) (1994); *Williams v. Bullock*, 231 Ga. 179, 180 (200 SE2d 753) (1973); *Williams v. Jones*, 219 Ga. 45, 46-47 (131 SE2d 553) (1963).

posal] and remainders."[2] As we stated in *Bienvenu*,

> [t]he existence of the power to dispose of the fee did not enlarge the life-estate into a fee. It must follow that [the life tenant's] power to sell a portion of the property in which her estate was expressly limited to one for life did not include the further power to destroy the interest of the remainderman in the proceeds of the sale. (Citations omitted.)[3]

Further, this rule is followed uniformly in other states.[4] In Texas, the rule has been stated as follows:

> When a life estate is expressly created by will and unlimited power of disposition given to the life tenant, with remainder over in whatever part of the estate remains undisposed of at the time of the death of the life tenant, the proceeds of sales made by the life tenant, undisposed of at the time of his death, as well as the unsold part of the very property devised, pass to the remainderman, provided of course, the language of the will does not disclose an intention that the proceeds of sales shall not so pass.[5]

In a case involving a broad right of disposal similar to that given to Nell in the case, the Missouri Supreme Court ruled that if a life tenant sold property subject to the life estate, the proceeds of the sale were subject to the original life estate and remainders. The Missouri court stated the rule somewhat differently from the Texas court, but to the same effect:

> "Questions as to what title, if any, a life tenant has to proceeds (or property obtained with proceeds) coming to his hands by reason of his exercise of a power of sale or disposal are of course wholly dependent on the terms and intent of the will or other instrument creating the power and property interests. However, under nearly all instruments thus

---

[2] Pindar, Georgia Real Estate Law and Procedure, § 7.40 (4th ed. 1993). See *Bienvenu v. First Nat. Bank*, 193 Ga. 101, 106-107 (17 SE2d 257) (1941). See also *Williams*, 219 Ga. at 46-47.

[3] *Bienvenu*, 193 Ga. at 107.

[4] See Annotation, Rights as Between Estate of Life Tenant and Remaindermen in Respect of Proceeds of Sale or Disposition Made in Exercise of Power Given Life Tenant, 47 ALR3d 1078 (1973); *Montgomery v. Browder*, 930 SW2d 772, 777-778 (Tex. App. 1996); *Gaskill v. United States*, 708 P2d 552, 555-556 (Kan. 1985); *St. Louis Union Trust Co. v. Morton*, 468 SW2d 193 (Mo. 1971).

[5] *Montgomery*, 930 SW2d at 777 (quoting *Edds v. Mitchell*, 184 SW2d 823, 825 (Tex. 1945)).

far in litigation, especially where the case has been merely the simple one of a life estate with superadded power of sale, the proceeds (or property obtained therewith) have been regarded as taking the place of property sold so that title was held to be in the remainderman subject to such rights of possession, user, investment, reinvestment, expenditure, or consumption as may have been given the life tenant."[6]

Applying these principles to this case, we conclude that, because Hansel's will does not express any intent that the proceeds of a sale would not be subject to the life estate and remainders created in his will, the "proceeds" of Nell's sale of the home — the condominium and certificate of deposit — were subject to the life estate and remainders created in Hansel's will.

2. Having determined that the condominium and the certificate of deposit were subject to the provisions of Hansel's will, we next address the appellants' contentions that Hansel's will did not grant Nell the power to dispose of property of Hansel's estate at her death. If Nell did not have that authority, then Nell's attempt to transfer the condominium under her will is invalid. Similarly, this lack of authority would invalidate Nell's attempt to transfer the funds in the joint account at her death pursuant to the account's survivorship feature.[7]

In analyzing the scope of Nell's power of disposition, we start with the principle that, "where an estate is expressly given for life with an added power of disposal, that power, although it may be absolute, does not enlarge the life estate to a fee."[8] In this regard, this Court has stated, on one occasion, that the very nature of a life estate "expressly limit[s] [a power of disposition] to inter vivos conveyances,"[9] and, on another, that a power of disposition "will be construed as authorizing *an inter vivos* conveyance of the fee by the life

---

[6] *Morton*, 468 SW2d at 196.

[7] OCGA § 7-1-813 (a) governs the donative features and disposition of the account after the death of one of the parties, and directs that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." Although OCGA § 7-1-815 provides that transfers resulting from § 7-1-813 (a) are "effective by reason of the account contracts involved in this article and are not to be considered testamentary," this provision does not mean that the transfers do not occur at death, but merely that "their validity as effective modes of *transfers at death* is not to be determined by the requirements for wills." (Emphasis supplied.) 8 ULA, Uniform Probate Code, § 6-106, Comment. See *In re Estate of Maxfield*, 856 P2d 1056, 1058-1059 (Utah 1993) (noting that joint bank accounts are sometimes referred to as a " 'poor man's will,' " and have been a popular estate planning tool).

[8] *Shields*, 264 Ga. at 561. Accord *Bienvenu*, 193 Ga. App. at 104-105.

[9] *Jenkins v. Shuften*, 206 Ga. 315, 321 (57 SE2d 283) (1950).

tenant" either by sale or gift.[10] Moreover, this Court has repeatedly held a power of disposition "and the mode of its exercise, when the latter has the effect of cutting out the remaindermen, must be strictly construed."[11] This Court thus has held that even a broad power of disposition does not give a life tenant the power to dispose of property by testamentary devise.[12] For these reasons, we conclude that in this case Nell had the authority to dispose of property by gift during her life, but did not have the power to transfer property at her death.

Accordingly, we hold that Nell did not have the authority to convey the condominium pursuant to her will or to convey the proceeds of the CD pursuant to the survivorship feature of that account.

3. The final issue raised by this appeal concerns whether Nell made an inter vivos gift of the funds in the joint account. The appellants concede, as they must, that the power of disposition granted to Nell by Hansel's will authorized Nell to make a gift of the proceeds of the certificate of deposit during her lifetime.[13] The appellants, however, contend that Nell never made an inter vivos gift of the funds in the account to Kayanne. We conclude that the record supports the appellants' contention.

OCGA § 7-1-812 (a) governs the ownership of a joint account during the lifetime of the parties, and directs that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."[14] OCGA § 7-1-812 (a) is identical to § 6-103 (a) of the Uniform Probate Code, as originally approved in 1969.[15] Cases and commentaries unanimously agree that § 6-103 (a) (as well as statutes based upon it) creates a presumption that a party funding a joint account does not intend to make a gift of the funds of the account during her life, but that the presumption is subject to rebuttal by clear and convincing evidence

---

[10] *Shields*, 264 Ga. at 561. (Emphasis supplied.)

[11] *Shields*, 264 Ga. at 561. Accord *Jenkins*, 206 Ga. at 320-321.

[12] *Shields*, 264 Ga. at 561; *Jenkins*, 206 Ga. at 320-321. Accord *Phillips v. Sexton*, 243 Ga. 501, 504-505 (255 SE2d 15) (1979) (because life tenant's estate terminates at death, life tenant with broad powers to dispose of land could not grant an option to purchase land that could be exercised after his death).

[13] E.g., *Shields*, 264 Ga. at 561; *Williams*, 231 Ga. at 180.

[14] This provision was enacted in 1976 as part of a series of statutes governing multiple party accounts. See Ga. L. 1976, p. 1388, § 8; OCGA §§ 7-1-810 to 7-1-821; Rehberg, Wills, Trusts, and Administration of Estates, 29 Merc. L. Rev. 291, 297 (1977). Those statutes, OCGA §§ 7-1-810 to 7-1-821, are substantially identical to provisions of the Uniform Probate Code, as originally approved in 1969, governing multiple party accounts and non-probate transfers. 8 ULA, Uniform Probate Code, Art. VI, §§ 6-101 to 6-113, as originally approved in 1969; Rehberg, supra, at 297. For changes made by the 1989 revision of Art. VI of the Uniform Probate Code, see 8 ULA, Uniform Probate Code, Supp., §§ 6-101 to 6-113.

[15] 8 ULA, Uniform Probate Code, Art. VI, § 6-103.

of a contrary intent.[16] We adopt this meaning for § 7-1-812 (a).

Accordingly, in this case, we must presume that when Nell funded the account, she did not intend to make an inter vivos gift of the proceeds. Moreover, the appellee offered no evidence whatsoever regarding Nell's intent in creating the account, thus failing to rebut the statutory presumption by "clear and convincing evidence of a different intent."[17] For these reasons, we conclude that Nell did not make an inter vivos gift of the funds in the account to the appellee.[18]

4. For the foregoing reasons, the judgment of the trial court is reversed. The case is remanded to the trial court for it to determine, in a manner consistent with this opinion, the disposition of the proceeds and property that resulted from the sale of the home.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED OCTOBER 6, 1997.

*Enoch Overby,* for appellants.
*Collins & Eddings, Robert L. Collins, Jr.,* for appellees.

---

[16] See Uniform Probate Code, § 6-103, Comment; Wellman, Transfer-On-Death Securities Registration: A New Title Form, 21 Ga. L. Rev. 789, 793 (1987); Wellman and Clark, Multiple Party Accounts: Georgia Law Compared with the Uniform Probate Code, 8 Ga. L. Rev. 739, 770 (1974); *In re Estate of Maxfield,* 856 P2d 1056, 1057-1059 (Utah 1993); *In re Estate of Combee,* 601 S2d 1165, 1166-1167 (Fla. 1992); *Commr. of Human Resources v. Levesque,* 528 A2d 456, 458 (Me. 1987); *In re Estate of Thompson,* 423 NE2d 90, 94-95 (Ohio 1981).

[17] OCGA § 7-1-812 (a).

[18] Georgia cases decided before the adoption of § 7-1-812 rigidly applied the requirements for inter vivos gifts to the creation of joint accounts, holding that such accounts could not satisfy the delivery requirement. For example, in *Stewart v. Stewart,* 228 Ga. 517, 518 (186 SE2d 746) (1972), we held as follows:

> In order for there to be a valid gift there must be proof of the present intention to give, a complete renunciation of right, by the giver, without power of revocation, and a delivery of the article given or some act accepted in law in lieu thereof. [Cits.] The deposit of money in a bank in a joint checking account or subject to demand of another where the depositor also retains the right to jointly or severally demand and receive the funds so deposited, nothing else appearing, is not such a surrender of dominion over the funds thus deposited as to satisfy the requirements of delivery for the making of a gift.

It is unclear whether these requirements for inter vivos gifts should continue to be rigidly applied to joint accounts in view of § 7-1-812 (a). Because § 7-1-812 (a) provides that the presumption that a depositor does not intend to create an inter vivos gift in the proceeds of the account is subject to rebuttal, it appears to contemplate that the non-depositing party could demonstrate that a gift was intended even though the depositor would still have the right to receive the funds deposited. Such a result would be a relaxation of the traditional requirements for an inter vivos gift.