A99A2077. PARKER et al. v. KENNON et al.
(530 SE2d 527)

SMITH, Judge.

Walter L. Kennon, Sr., the appointed guardian of the person and property of Virginia N. Gray, filed suit against Gray's three daughters, Jane Parker, Linda Hunter, and Virginia Kemp.[1] The suit sought recovery of funds from the daughters, alleging they had misappropriated Gray's assets. Specifically, the suit alleged that Parker and Hunter had each wrongfully converted two certificates of deposit.

After various pretrial motions were made and denied, the case came on for trial before the court and a jury. Kennon called all three daughters for purposes of cross-examination, and he then took the stand for direct examination. But during the cross-examination of Kennon, Parker and Hunter requested that the court decide the case on the applicable law without proceeding further with the trial, and Kennon agreed.

The trial court received a number of documents into evidence, took the case under advisement, made findings of fact and conclu-

---

[20] *Curtis*, supra, 236 Ga. at 362 (1) (intimidation may substitute for force).

[1] This is the second appearance of this case in this court. In *Parker v. Kennon*, 235 Ga. App. 272 (509 SE2d 152) (1998) (*Parker I*), we dismissed the direct appeal of Parker and Hunter from an order denying their motion to lift a freeze on bank accounts each held jointly with their mother, Gray.

sions of law, and entered final judgment in favor of Kennon.[2] The court ruled that Parker and Hunter had converted the funds and ordered repayment of the funds plus interest and attorney fees. Parker and Hunter now appeal this judgment, contending that the trial court erred in ruling that the funds in the joint accounts belonged to Gray, in finding that they converted the funds, and in joining them as defendants. Finding no error, we affirm the judgment.

1. The trial court ruled that the funds from the redeemed CDs were still in Gray's estate and ordered the funds returned with penalties. Parker and Hunter contend this was error. We do not agree.

The record shows that in May 1996, Gray, who resided in Columbus, Muscogee County, suffered a stroke that incapacitated her. Included among her assets at that time were two CDs at SunTrust Bank in the names of Gray and Hunter and two others at the same bank in the names of Gray and Parker. The CDs had been purchased on varying dates ranging from 1981 to 1986. Parker and Hunter admitted at trial that they had not contributed anything to the purchase of these CDs.

Later in 1996, Parker and Hunter removed these CDs from their mother's safe deposit box and cashed them. With the proceeds,[3] they purchased two CDs, each in the amount of $100,000, in their joint names and opened a joint checking account with the $31,275.06 remaining. A later withdrawal from these CDs was made in the amount of $10,000, which was deposited to the joint checking account of Parker and Hunter.

Evidence was presented that the balance in the joint checking account at the time of trial was between $17,000 and $18,000, Hunter admitted that she and her sister withdrew funds from the joint accounts. She stated that the money in those accounts was "personal business," because once she and her sister had cashed in the CDs, the funds belonged to her and her sister. Parker testified to the same belief.

Parker and Hunter still maintain on appeal that when they redeemed the CDs each of them held jointly with their mother and deposited the funds in accounts bearing only their names, their mother ceased to have any interest in the funds. That is simply not the law. OCGA § 7-1-812 (a) provides: "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net

[2] The trial court also found that Kemp had not misappropriated any of Gray's funds. Kemp is nominally an appellee, therefore, in this appeal.

[3] Hunter redeemed two certificates totaling $73,423.35 and paid a penalty of $985.34 for early withdrawal, leaving $72,438.01. Parker redeemed two certificates totaling $162,442.19 and paid a $3,605.14 early withdrawal penalty, leaving $158,837.05.

contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." In *Caldwell v. Walraven*, 268 Ga. 444 (490 SE2d 384) (1997), the Supreme Court of Georgia reasoned that because OCGA § 7-1-812 (a) is identical to a provision in the Uniform Probate Code, as originally approved in 1969, the interpretation, cases, and comments on that section of the probate code should be adopted and applied to OCGA § 7-1-812 (a). Id. at 448-449 (3). Those cases and commentaries agree unanimously that the statute creates a presumption that one funding a joint account does not intend to make a gift of the funds of the account during life, although this presumption may be rebutted by clear evidence to the contrary. Id. Applying that reasoning here, both Parker and Hunter admitted they made no contributions to those CDs; no evidence whatsoever was presented in this case of any other intent; and all the parties to the original joint CDs are still in life, including Gray. The trial court therefore correctly ruled that the funds belonged entirely to Gray.

The cases and statutes cited by Parker and Hunter in support of their position do not require a different result, as they all relate to their authority to withdraw funds from the joint account. OCGA § 7-1-811, relied upon by Parker and Hunter, provides that,

> Code Sections 7-1-812 through 7-1-814, concerning beneficial ownership as between parties or as between parties and P.O.D. payees or beneficiaries of multiple-party accounts, are relevant only to controversies between those persons and their creditors and other successors and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts.

But this Code section does not address the real issue in this case, which is ownership of the funds. It is absolutely undisputed that both Parker and Hunter had the authority to withdraw the funds from the CDs; that is the very essence of a joint account. The trial court so found. Gray's daughters were her joint tenants. Because we must presume that Gray did not intend to make a gift to her daughters of the funds she alone contributed to the account, her daughters had no authority to use the funds for their own personal benefit.

2. Parker and Hunter contend that because they did not convert the funds, they did not commit a tort. They argue that because they were not joint tortfeasors with Kemp and did not reside in Muscogee County, the trial court had no jurisdiction over them. They also argue that since no tort was committed, an award of attorney fees and expenses was unwarranted. But their argument on this issue rests on their reliance on OCGA § 7-1-811, which we have deter-

mined is misplaced. The trial court found that Parker and Hunter had converted their mother's funds, had acted in bad faith in doing so, had been stubbornly litigious, and had caused unnecessary trouble and expense to recover the funds, thereby authorizing an award of attorney fees and expenses under OCGA § 13-6-11.

> The tort of conversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.

*Paulsen Street Investors v. EBCO Gen. Agencies*, 237 Ga. App. 116, 121 (3) (514 SE2d 904) (1999). We have determined that the proceeds of the cashed-in CDs remained the property of Gray. Because Parker and Hunter assumed and exercised the right of ownership over them, it follows that this constituted the tort of conversion. Further, Parker and Hunter accomplished the conversion jointly, going together to SunTrust Bank in Columbus to redeem the original CDs and going together to SouthTrust Bank in Columbus to open new joint accounts with the proceeds. We therefore find no merit in their contention that the trial court erred in ruling that they converted those funds.

As to jurisdiction, both Parker and Hunter are Georgia residents, and therefore the issue they raise is one of venue, which may be waived. *Ganny v. Ganny*, 238 Ga. App. 123, 125 (2) (518 SE2d 148) (1999). Venue was proper when the suit was filed, because Kemp resided in Muscogee County. Ga. Const. of 1983, Art. VI, Sec. II, Par. IV has been construed to provide that suits against joint tortfeasors residing in different counties may be brought in any county where one of them resides. This is true, but if no judgment is taken against a resident defendant, venue as to the nonresident defendants vanishes unless the issue of venue is waived. *Timberlake Grocery Co. &c. v. Cartwright*, 146 Ga. App. 746, 747 (247 SE2d 567) (1978). Although a judgment was not taken against Kemp in this case, Parker and Hunter waived any issue regarding venue by failing to raise it even after the verdict. They also failed to raise the issue of venue in responsive pleadings, participated in the trial, and requested that the trial court decide the case on its merits during the trial. The issue of venue was clearly waived. *Sidwell v. Sidwell*, 237 Ga. App. 716, 717 (1) (515 SE2d 634) (1999).

3. For the reasons stated in Division 1 of this opinion, we find no merit in Parker and Hunter's contention that the trial court lacked the authority to freeze the joint accounts of Parker and Hunter. Like OCGA § 7-1-811, OCGA § 7-1-814, giving each joint tenant the right to close a joint account and open a new account on different terms, is ʼ

addressed only to the authority of joint tenants with regard to the joint account. It has no bearing on ownership of the funds in the account.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 8, 2000 — 

*L. B. Kent*, for appellants.
*Denney, Pease, Allison & Kirk, John W. Denney, Ashley C. McKenna*, for appellees.