## A04A2133. FLUKE v. WESTERMAN.
### (609 SE2d 744)

SMITH, Presiding Judge.

This appeal arises out of the trial court's order granting summary judgment to defendant Teresa Westerman in Christine Fluke's suit for an equitable division of property. Fluke contends that the trial court failed to give her notice and opportunity to respond to the motion and that summary judgment is not warranted under the law as it relates to inter vivos gifts. Because we find the trial court's ruling proper in all respects, we affirm.

Fluke and Westerman lived together for more than ten years. After their relationship ended, Fluke brought this action against Westerman, NBank Mortgage Company, and Citibank, FSB, alleging conversion of personal property and seeking equitable partitions of real and personal property. One issue heavily disputed below and on appeal concerns the ownership of several thousand shares of UPS stock placed by Westerman into a joint brokerage account. The record includes an affidavit filed by Westerman in which she testified that at some point during their relationship, she "desired to take steps to ensure that Ms. Fluke would be financially cared for in the event of any death" and that upon advice from a financial planner employed by American Express, Westerman "established a joint brokerage account." Westerman testified further as follows:

> It was my intention eventually to place stock in the account that would be transferred in the event of my death to Ms. Fluke. It was not my intention to give her the stock immediately. I understood the "survivorship" aspect of the account would only be effective at my death. Until then, I understood that I retained full access to the account and all assets in it and could withdraw them at any time.

According to Westerman's affidavit, sometime in 2000, she gave Fluke money to pay credit card debt but that rather than paying the debt, Fluke deposited the money into the joint brokerage account and began day trading on margin. Westerman testified that she learned of Fluke's activities when she "received a margin call from the brokerage" informing her the account required additional funds. As a result, Westerman deposited 17,889 shares of UPS stock into the account in January 2001. In April 2002, she withdrew the portion of the stock "that was not necessary to cover the remaining margin debt." Westerman stated that as of the date she executed the affidavit, the account held 1,000 shares of a particular stock that Fluke "bought day trading, over 5000 shares of my UPS stock necessary to

cover the margin debt, and over $140,000 in unpaid margin debt incurred by Ms. Fluke with my money."

In an order drafted by Fluke's attorney, the trial court directed Westerman to file a motion for summary judgment by way of letter brief, addressing the "very narrow issue of law as to whether or not under certain undisputed facts of this case the joint stock account of the parties constitutes an incomplete gift from the Plaintiff to the Defendant as a matter of law." The order instructed the parties that Westerman's letter brief was due on March 24, 2004, and Fluke's response was due on March 26, 2004. We note that the letter briefs are not a part of the appellate record. Fluke states in her appellate brief that "neither of the briefs were even filed with the clerk or made a part of the record."

On April 15, 2004, the trial court entered an order granting partial summary judgment to Westerman. The court stated the issue as follows:

> The question before the court concerns whether or not plaintiff Fluke's claim to funds as an inter vivos gift, held in an American Express account, under defendant's and plaintiff's names as tenants in common can survive defendant's motion for summary judgment. Put another way, is there a genuine issue of material fact that the American Express account in issue was an inter vivos gift from Westerman to Fluke?

The court's order further recites that during a March 22, 2004 hearing, counsel for both parties had presented "some oral argument" and that the court had directed the parties to submit letter briefs. A transcript of the March 22 hearing is not a part of the appellate record. The court also stated in the order that in reaching its decision, the court considered the record "as it stood" on the date Fluke's brief was submitted, March 26, 2004. The court then reached the following conclusions of law:

> Based upon the complete record at the time of receipt of the last letter brief in this matter, other than plaintiff's allegation in her complaint, there is no evidence for the court to consider on the question of the establishment of the brokerage account as an inter vivos gift. Plaintiff's letter brief skips this step in the analysis of this issue.
>
> What evidence was there before the court, at the time of the hearing or during the period the briefs were being prepared . . . that created a genuine issue of material fact? None.

There was, however, Westerman's unanswered affidavit denying the creation of a gift.

Relying on *Caldwell v. Walraven*, 268 Ga. 444 (490 SE2d 384) (1997) and noting that Fluke had cited this case in her letter brief, the trial court granted summary judgment to Westerman. The court stated "that the presumption that a party funding an account does not intend to make a gift of the funds during her lifetime holds true here, where there is nothing in the record that rebuts that presumption." Fluke filed a motion for reconsideration and clarification. The trial court orally denied the motion. The oral ruling was not reduced to a written order, however, and Fluke's appeal is from the April 15 written order granting summary judgment to Westerman.

1. Fluke first contends that the trial court erroneously "broadened the issue on summary judgment" and did not give her "notice and opportunity to fully and fairly respond." She argues that "the trial court instructed the parties to merely submit case law on a very narrow issue of law regarding relinquishment of control of an asset." During the April 23, 2004 hearing on her motion for reconsideration Fluke repeatedly referred to her "understanding" that during the March 22 hearing, the trial court directed counsel to brief only the narrow legal issue of whether relinquishment of control of the account defeated the gift. She mentioned that the briefs filed by the parties addressed only this narrow issue. While the transcript of the April 23 hearing appears in the appellate record, no transcript of the March 22 hearing is included. In her notice of appeal, Fluke expressly stated that the only transcript to be included in the record on appeal was that of the April 23 hearing.

Because she is the appellant, it is axiomatic that Fluke bears the burden of showing error "affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed." (Citation and footnote omitted.) *Boles v. Lee*, 270 Ga. 454, 455 (1) (511 SE2d 177) (1999). To satisfy this burden, an appellant must "compile a complete record of what happened at the trial level which, at a minimum, includes a transcript of that portion of the proceedings in which the error is alleged to have occurred or, alternatively, a stipulation of the case approved by the judge who conducted the proceedings. [Cits.]" *Shamsai v. Coordinated Properties*, 259 Ga. App. 438 (1) (576 SE2d 901) (2003). We cannot assume facts from a silent record or a nonexistent transcript. See *Boles*, supra, 270 Ga. at 455 (1). If Fluke wanted this court to consider the issues that were raised in the March 22 hearing, it was her responsibility to make sure that this court was provided with a full record. She failed in this regard, as her notice of appeal designates only the transcript of the April 23, 2004 hearing to be included in the record on appeal.

The only information in the record concerning the scope of the summary judgment motion appears in the trial court's order, which was *drafted by Fluke's counsel*, and an e-mail sent by the trial court to counsel after the letter briefs had been filed. That e-mail is more fully discussed in Division 2. Fluke's counsel conceded during the hearing on her motion for reconsideration that the trial court's order "framed the issue as whether or not there was a gift from Westerman to Fluke." In its ruling, the trial court addressed this very issue, concluding that no gift had occurred. The scope of the issue was defined by Fluke herself and was not broadened by the trial court. As we stated in *Hornsby v. Odum*, 198 Ga. App. 472 (402 SE2d 56) (1991), at every stage of the proceedings in this case, Fluke's "own procedures contributed to the rulings" about which she complains. "One cannot complain of a judgment, order, or ruling that his own procedure or conduct aided in causing." (Citation and punctuation omitted.) Id. at 473 (2).

*Carroll v. Finova Capital Corp.*, 265 Ga. App. 517 (594 SE2d 720) (2004), cited by Fluke, is not controlling. In *Carroll*, we reversed the trial court's sua sponte grant of summary judgment to a party on the ground that the court based its ruling on an issue not addressed by the parties during the hearing on the motion for summary judgment. Here, however, we do not have the transcript of the March 22 hearing, during which the trial court ostensibly framed the issues to be addressed on summary judgment. Anything that might have occurred during that hearing provides no basis for reviewing the trial court's ruling. As discussed above, this transcript is absent from the record as a result of Fluke's own direction in her notice of appeal.

2. Fluke also argues that "[t]he trial court without notice closed the record, after broadening the issues being considered, thus depriving [her] a full and fair opportunity to respond." After the parties submitted their letter briefs, it appears that the trial court sent an e-mail to counsel, stating:

> I have read your letter briefs and looked over the cases submitted. I have just completed a review of the court file. For purposes of the matter under consideration, the record is closed. It is undisputed that it was defendant who opened the Amex joint account, correct? Paragraph 7 of plaintiff's petition for a TRO reads in part: "Prior to the filing of this lawsuit, Defendant . . . prevented plaintiff from obtaining access . . . Defendant's affidavit sets forth what she says her intent was relative to the opening of the account." Where is there in the record, that is currently before this court, anything (other than plaintiff's bare assertion about a joint

interest) that evinces an inter vivos gift and/or relinquishment of total control over that account on the part of Westerman? I emphasize that this is a limited question.[1]

Before summary judgment was entered, Fluke did not formally object to the trial court's statement that the record was closed. Instead, the record contains a letter from Fluke's counsel responding to the e-mail, reciting that another attorney would respond by e-mail to the trial court's questions. The letter recites further:

> In conjunction with [the attorney's] email, attached please find portions of plaintiff Christine Fluke's deposition testimony. . . . Specifically, I have included a sampling of those portions of the testimony discussing the American Express Account and Ms. Fluke's understanding of its purpose and the reason why the account was set up with Ms. Westerman.

The letter also notes that counsel had attached a copy of the brokerage account application, which allegedly showed that the holders of the account had access to it. Neither this deposition testimony nor the application appears in the record.

The order *drafted by Fluke's counsel* noted explicitly that the issue of whether a gift had been made by Westerman to Fluke was to be decided on "certain undisputed facts." The trial court did not ask in its e-mail for additional facts; it simply asked the parties to point to facts already in the record showing the existence of an issue as to whether Westerman had made a gift. Thereafter, Fluke did not object to the closing of the record but attempted to ignore the trial court's e-mail transmission by simply submitting more evidence. Again, any issue that arose concerning the closing of the evidence occurred as a result of Fluke's own actions. As stated by Westerman in her appellate brief, Fluke in her summary judgment response "was free to identify disputed material facts, controlling contrary legal arguments, or any other matters in opposition. . . . She was free to object to the procedures and deadlines. In short, [she] was not limited in any fashion by the trial court from making any response she thought appropriate." Fluke drafted the order about which she now complains and failed to file any objection to the trial court's statement that the record was closed. We find no basis for reversal.

---

[1] We note that during the hearing on Fluke's motion for reconsideration, the trial judge explained that he sent the e-mail "on the outside chance that [he] was overlooking something."

3. Fluke argues that the trial court erroneously failed to set the motion down for a hearing. We find no merit in this contention. Uniform Superior Court Rule 6.3 provides that unless the trial court orders otherwise, with the exception of motions for new trial and judgment notwithstanding the verdict, all civil motions "shall be decided by the court without oral hearing." Id. With respect to motions for summary judgment, the rule specifically states a hearing shall be permitted only if a party requests a hearing in writing within a certain time period. But Fluke did not request a hearing. Accordingly, a hearing was not required. See *Kelley v. First Franklin Financial Corp.*, 256 Ga. 622 (351 SE2d 443) (1987); *Neal v. Baker's Liquor Store*, 216 Ga. App. 269, 270-271 (2) (453 SE2d 816) (1995). *Royston v. Royston*, 236 Ga. 648 (225 SE2d 41) (1976), relied on by Fluke, is not controlling here. That case was decided in 1976, well before the enactment of Uniform Superior Court Rule 6.3, discussed above, which requires a hearing only on written request by a party.

4. Finally, we reach the merits of the trial court's ruling. Fluke contends that summary judgment was not authorized under the law. OCGA § 7-1-812 (a) provides that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." It appears to be undisputed that the funds at issue — the UPS stock shares — were deposited solely by Westerman. Therefore, under OCGA § 7-1-812 (a), that stock belonged solely to Westerman, absent a clear and convincing showing of a different intent. The Georgia Supreme Court has concluded that this statute "creates a presumption that a party funding a joint account does not intend to make a gift of the funds of the account during her life, but that the presumption is subject to rebuttal by clear and convincing evidence of a contrary intent." (Citations and footnote omitted.) *Caldwell*, supra, 268 Ga. at 448-449 (3). Given this presumption and the absence of any evidence in the record of a contrary intent on the part of Westerman, the correctness of the trial court's ruling on Westerman's motion for summary judgment is self-evident. As pointed out by Fluke, the Supreme Court stated in *Caldwell* that OCGA § 7-1-812 (a) "appears to contemplate that the non-depositing party could demonstrate that a gift was intended even though the depositor would still have the right to receive the funds deposited." Id. at 449, n. 18. Although a nondepositor might be able to show that the depositor intended to make a gift, Fluke made no such showing in this case, and Westerman was entitled to summary judgment.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 26, 2005.

*Denise D. VanLanduyt, Joyce D. Colmar*, for appellant.
*Mazursky & Dunaway, Randall A. Constantine, Robert E. Johnson, Jr.*, for appellee.