**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 20, 2014**

# In the Court of Appeals of Georgia

A14A0842. HOWARD v. LEONARD.

BRANCH, Judge.

A father, mother, and daughter had been joint owners of a credit union account for 16 years when the father died. While the mother was still alive and with her purported endorsement, the daughter then moved half of the account balance into an account for her mother and half into an account for herself. One of the daughter's brothers, who was subsequently appointed as his mother's conservator, later filed suit seeking a declaration that all the funds belonged to the mother, not the daughter. The trial court granted summary judgment in favor of the brother and denied the daughter's cross motion in which she sought to establish ownership of half of the account. The daughter appeals both rulings. We reverse in part.

On appeal from the grant of summary judgment, appellate courts "conduct[ ] a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Shekhawat v. Jones*, 293 Ga. 468, 469 (746 SE2d 89) (2013) (citation omitted); *State Dept. of Corrections v. Developers Sur. & Indem. Co.*, 324 Ga. App. 371, 372 (750 SE2d 697) (2013).

> Where the evidence on motion for summary judgment is ambiguous or doubtful, the party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences and such evidence construed most favorably to the party opposing the motion. Furthermore, while a movant's evidence is to be carefully scrutinized, a respondent's evidence is to be treated with indulgence.

*Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (632 SE2d 135) (2006) (citations and punctuation omitted).

Construed in favor of the appellant for the purpose of addressing the appellee's summary judgment, the facts show that Royce and Leola Leonard were married for many years and at least 20 years ago, Royce, an employee of the United States Postal Service, established joint account No. 6626 with Leola at the Atlanta Postal Credit Union ("APCU"). The Leonards raised three children – Ronald, David, and Marketta (now known as Marketta Howard) – who are all now adults. On November 21, 1995,

2

Royce, Leola, and Marketta Howard signed a "Joint Membership Agreement" with APCU regarding account No. 6626. The agreement provides that going forward, all past and future deposits would be owned "jointly with right of survivorship," any member could withdraw funds deposited into the account, and upon the death of one or more members, all deposits would vest in the survivor or survivors:

> The undersigned hereby apply for a "joint membership" in the Atlanta Postal Credit Union and, in consideration of the approval of applicants in joint membership by the said credit union, do hereby agree each with the other and with the said credit union, that all sums now invested in deposits or hereafter paid in as payments on deposits, and all interest therefrom shall be owned by us jointly with right of survivorship, and shall be subject to withdrawal by either or the survivor of us and said payments upon withdrawal shall be valid and release and discharge such credit union from any payments so made. In case of the death of any one or more of said joint members all rights and privileges of membership and all rights and privileges of ownership in all deposits held jointly in said credit union shall be vested in the survivor or survivors.

Royce signed the agreement as the "applicant," and Leola and Howard signed as "Joint Owner[s]." The agreement modified APCU account No. 6626, and it made Howard an owner of the account along with her parents. During the life of account No. 6626, only Royce made deposits; neither Leola nor Howard made any.

Royce Leonard died on December 7, 2011, at age 89; Leola was 89 at the time, and Howard had concluded as early as April 2011, that her mother had begun to lose

3

her mental capacities and may have had dementia. After her father's death, Howard contacted APCU regarding how to handle the joint account. Thus, in February 2012, based on APCU's instructions, Howard used $25 from the account to open a separate joint account at APCU for her mother and herself, into which Howard planned to transfer the funds from account No. 6626. Shortly thereafter, however, Howard learned from APCU that Ronald, who was not a joint party on account No 6626, was making inquiries with APCU about transferring the balance of account No. 6626 to a different bank. Ronald later admitted that without telling Howard, he took his mother to Regions Bank in order to attempt to transfer the APCU funds to that bank. On April 2, 2012, after learning of Ronald's inquiries at APCU, Howard asked APCU to issue a check for the entire balance of $143,282.93 on account No. 6626 made payable to "Royce P Leonard or Leola S Leonard c/o Marketta Leonard" and to mail it to her.

Meanwhile, on April 3, a doctor signed an affidavit to the effect that Leola was incapacitated by reason of dementia; that she lacked the capacity to make or communicate responsible decisions concerning her health or safety or the management of her property; and that her condition would last for the rest of her life. Five days later, Ronald and David notified Howard that they were preparing to file petitions to appoint a guardian for Leola and a conservator for her estate. On April

9, the clerk of the probate court saw all three Leonard children, as well Howard's husband and Leola, appear at court to complete and file the petitions. The clerk overheard a conversation between the three children in which Howard told Ronald the dollar amount of the balance of the APCU joint account. Although the clerk did not recall anyone's words exactly, she also averred that she heard Ronald ask Howard for a letter stating that she was not the owner of the APCU account and heard Howard say something to the effect that "the money is mother's." That same day, Howard refused to sign a letter addressed to APCU stating that the entire balance of account No. 6626 belonged to Leola and that Howard did not claim any ownership interest.

Shortly after the gathering at probate court, Howard received the check from APCU (which was dated April 2) for the balance of account No. 6626, and she and her mother endorsed it. On April 23, Howard opened two separate individual accounts at the Cohutta Banking Company and deposited half of the funds into an account in her own name and the other half into an account in the name of "Marketta L. Howard for the Benefit of Leola Leonard."

On August 29, 2012, the probate court held a hearing on the petitions to appoint a guardian and conservator, and on September 12, it appointed Ronald as conservator of his mother's estate and Ronald and Howard as co-guardians of their

mother. The probate court hearing transcript was tendered as evidence in the present action without objection.

After receiving a demand from Ronald in his role as conservator that she transfer to Ronald all funds previously on deposit in account No. 6626, Howard sent to Ronald by certified mail a check for the balance, including interest, of her mother's account at the Cohutta Bank; delivery was refused. Out of fear that Ronald would again attempt to take the funds in the accounts, Howard transferred the funds deposited in her own name to an account at the Bank of Chickamauga.

On October 2, 2012, Ronald, acting as conservator of his mother's estate, filed a verified complaint against Howard, alleging that she had converted her mother's interest in the account and seeking all funds that belonged to his mother. He also asked the court to require Howard to deposit all funds removed from the APCU account No. 6626 into the registry of the court, which Howard promptly did. Howard responded to the suit with a verified answer and a counterclaim seeking an accounting of her mother's estate and a constructive trust on any funds in her mother's estate. Leonard died on November 21, 2012, and Ronald, who was appointed as executor of his mother's estate, was substituted as the plaintiff.

Ronald moved for summary judgment, seeking a ruling that all of the funds previously on deposit in account No. 6626 belonged to his mother and his father's

6

estate, and not Howard; at oral argument, he argued that the funds belonged to his mother's estate. Howard also moved for summary judgment, seeking a ruling that one-half of the funds in account No. 6626 belonged to her.

Following a hearing on the cross-motions for summary judgment, the trial court found that Royce's contributions to APCU account No. 6626 were "marital contributions" and that there was no evidence that Royce or Leola intended to make a gift to Howard during their lifetimes. The court held that although Howard had a right under law to withdraw the funds from APCU, she had no authority to place the funds into an individual account. Finally, because Howard contributed nothing to the APCU account whereas Leola "contributed marital funds," Howard had no right to any of the money from account No. 6626. The court therefore granted Ronald's motion for summary judgment. On appeal Howard contends the trial court erred by concluding that deposits made by one spouse are also considered deposits of "marital funds" by the other spouse and by disregarding the requirement that the intent of the joint account holders be shown by clear and convincing evidence. She also contends that the trial court erred by denying her motion for summary judgment.

Resolving these issues depends on several provisions of Article 8 of Chapter 1 of the Banking and Finance Code governing multiple-party accounts. See OCGA § 7-1-810 et seq. (the "MPA Act").[1]

1. Ronald, who is also executor of his father's estate, argued in his motion for summary judgment that his father's estate was entitled to funds in account No. 6626. Because the trial court did not state specifically what relief was being granted in its order granting summary judgment, we must address this argument. In this case, however, Royce's estate is not a party; moreover it is clear that Royce's estate has no claim to the funds that were on deposit in account No. 6626 at the time of Royce's death. Under the MPA Act, upon the death of one party[2] to a "joint-account,"[3] the

---

[1] These provisions "are substantially identical to provisions of the Uniform Probate Code, as originally approved in 1969, governing multiple party accounts and non-probate transfers." *Caldwell v. Walraven*, 268 Ga. 444, 449, n. 14 (490 SE2d 384) (1997), citing 8 ULA, Uniform Probate Code, Article VI, §§ 6-101 to 6-113, as originally approved.

[2] A "party" means "a person who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account." OCGA § 7-1-810 (7).

[3] A "joint account" means "an account payable on request to one or more of two or more parties, whether or not mention is made of any right of survivorship." OCGA § 7-1-810 (4).

estate of the decedent takes nothing without clear and convincing evidence of a different intent at the time the account was created:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties *as against the estate of the decedent*, unless there is *clear and convincing evidence* of a different intention at the time the account is created.

OCGA § 7-1-813 (a) (emphasis supplied).[4] And "[a] right of survivorship arising from the express terms of the account . . . cannot be changed by will." OCGA § 7-1-813 (e).

Here, the relevant incarnation of account No. 6626 was created on November 21, 1995, when Howard and her parents signed the APCU joint membership agreement. See OCGA § 7-1-814 (terms of multiple-party account can be changed by presenting a proper modification agreement to the financial institution signed by "all parties with a present right of withdrawal"). And there is no evidence in the record,

---

[4] OCGA § 7-1-813 is applicable to a claim by the estate of a deceased party, e.g., Royce's estate, to a joint account against a co-party to the account because OCGA § 7-1-812 through 7-1-814, "concerning beneficial ownership as between parties . . . or beneficiaries of multiple-party accounts, are relevant only to controversies between those persons and their creditors and other successors[.]" OCGA § 7-1-811. See, e.g., *Lamb v. Thalimer Enterprises*, 193 Ga. App. 70, 71 (1) (386 SE2d 912) (1989) (OCGA § 7-1-812 applicable to controversy between creditor of one joint-account party against other joint-account party); *James v. Elder*, 186 Ga. App. 810, 811 (368 SE2d 570) (1988) (OCGA § 7-1-813 applicable to a suit between estate of deceased account party and account co-party), overruled on separate grounds, *Mashburn v. Wright*, 204 Ga. App. 718, 720 (420 SE2d 379) (1992).

let alone clear and convincing evidence, of any one of the joint parties' intent as of November 1995 other than the language of the agreement itself, which plainly provides that the parties agreed that the account was created "jointly with right of survivorship" and that upon the death of one or more members, all deposits would vest in the survivor or survivors. See, e.g., *Urban v. Lemley*, 232 Ga. App. 259, 260 (1) (501 SE2d 529) (1998) (funds belonged to joint account survivor, not estate of co-party, where no clear and convincing evidence was presented that depositor did not intend for the survivorship provisions to apply when she opened the joint accounts); *Willig v. Shelnutt*, 224 Ga. App. 530, 532 (1) (480 SE2d 924) (1997) (funds in joint account belonged to survivor, not estate of the co-party, where estate failed to rebut the OCGA § 7-1-813 (a) presumption with clear and convincing evidence of a different intention at the time the joint accounts were created). Compare *James*, 186 Ga. App. at 811 (clear and convincing evidence presented to show that deceased did not intend to make a gift of the funds to co-party). Further, Howard's purported admission on April 9, 2012, that the money was "mother's," is not evidence of the joint parties' intent over 16 years earlier. *Urban*, 232 Ga. App. at 260 (1) (after death of one co-joint account party, other co-party's statement that he considered joint account funds to belong to deceased was not relevant to deceased's intent when joint

10

account was created). Thus, upon Royce Leonard's death, his estate had no claim to the APCU account, and the deposits vested jointly in Leola Leonard and Marketta Howard with right of survivorship.

2. The next question is whether, after her father's death, Howard was authorized to withdraw funds from account No. 6626 and deposit them, at least in part, in her own name in a different account. As shown below, although Howard had the right to withdraw the funds, beneficial ownership of those funds is a separate question.

(a) First, under the terms of her account agreement and applicable law, Howard was clearly authorized to withdraw all the funds in the account. The joint membership agreement is "a contract of deposit of funds between a depositor and a financial institution." OCGA § 7-1-810. That agreement provides that the deposits in the account "shall be subject to withdrawal by either or the survivor of us." And the MPA Act provides that financial institutions may pay "[a]ny sums in a joint account . . . on request, to any party without regard to whether any other party is incapacitated or deceased at the time the payment is demanded[.]" OCGA § 7-1-817. See also OCGA § 7-1-810 (4) (a joint account is payable on request to "one or more of two or more parties"). Finally, the law of joint accounts found in OCGA § 7-1-812 through 7-1-

814 "concerning beneficial ownership as between parties" has "no bearing on the power of withdrawal of these persons as determined by the terms of account contracts." OCGA § 7-1-811. Thus, Howard was authorized to request a withdrawal of the funds in APCU account No. 6626. See *Parker v. Kennon*, 242 Ga. App. 627, 629 (530 SE2d 527) (2000) (authority to withdraw from joint account is a separate issue from authority to use funds for personal benefit).

(b) Second, with regard to beneficial ownership of funds in a joint account upon the death of one co-party, the MPA Act provides that where there are two or more surviving parties of a joint account,

> the respective ownership of each during his lifetime shall be in proportion to his *previous ownership interests* under Code Section 7-1-812, *augmented* by an equal share for each survivor of *any interest the decedent may have owned in the account immediately before his death*; and the right of survivorship continues between the surviving parties.

OCGA § 7-1-813 (a) (emphasis supplied). The plain wording of the statute requires us to determine the ownership interests of Leola and Howard under OCGA § 7-1-812 immediately before Royce's death and to add thereto an equal share for each survivor of any interest Royce had just prior to his death. Under OCGA § 7-1-812 (a), a joint account "belongs, during the lifetime of all parties, to the parties in proportion to the

12

net contributions[5] by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."[6] Our Supreme Court has held that OCGA § 7-1-812 (a)

> creates a presumption that a party funding a joint account does not intend to make a gift of the funds of the account during her life, but that the presumption is subject to rebuttal by clear and convincing evidence of a contrary intent.

*Caldwell*, 268 Ga. at 448 (3) (footnote omitted). Whether there is a different or contrary intent is ordinarily a question of fact. *Daniell v. Clein*, 206 Ga. App. 377, 381 (1) (425 SE2d 344) (1992).

---

[5] The "'[n]et contribution' of a party to a multiple-party account as of any given time means the sum of all deposits thereto made by *or for him*, less all withdrawals made by or for him which have not been paid to or applied to the use of any other party, plus a pro rata share of any interest or dividends included in the current balance." OCGA § 7-1-810 (6) (emphasis supplied).

[6] The clear and convincing standard of OCGA § 7-1-812 (a) has been applied repeatedly to resolve disputes that arose when both co-parties to a joint account were living. See, e.g., *Fluke v. Westerman*, 271 Ga. App. 418, 423 (4) (609 SE2d 744) (2005) (suit between co-parties to account regarding whether one party intended a deposit as a gift); *Parker*, 242 Ga. App. at 627 (suit by guardian of person and property of incapacitated mother against daughters for converting CDs jointly owned by mother and daughters); *Bradshaw v. McNeill*, 228 Ga. App. 653 (492 SE2d 568) (1997) (suit by one niece against second niece who had power of attorney over living aunt's affairs and who liquidated joint account held by aunt and first niece).

It is undisputed that all of the funds in the APCU account were contributed by Royce Leonard. But as shown, the net contributions of a party to a multiple party account include deposits made "for" another party. OCGA § 7-1-810 (6). Ronald argues that because his father's contributions were made for the benefit of the marriage and his father's will left everything to his wife, all of Royce's deposits belonged to Leola at Royce's death. As already shown, however, the MPA Act requires a determination of the ownership interests in the APCU account *just prior* to Royce's death. And, "[a] right of survivorship arising from the express terms of the account or under this Code section, . . . cannot be changed by will." OCGA § 7-1-813 (e). Thus, any assumption that Royce's ownership interest in the APCU account just prior to his death became Leola's upon his death because of his will is incorrect. Rather, because the net contributions of a party to a multiple party account include deposits made "for" another party, we must determine whether there is any evidence regarding who the deposits were for; we must also determine whether there is other evidence of intent regarding ownership of funds in the account. The record reveals an issue of fact on these questions.

First, Howard made a statement that the funds in the APCU account belonged to Leola when she said "the money is momma's." Second, at the August 29, 2012

probate court hearing, Ronald's ex-wife testified that Royce Leonard had said several times, the last being in the fall of 2010, that the money in the APCU account "would be left to Marketta," that the money in the safe deposit box would be left to Ronald, and that the money in a checking account would be left to David. See generally *Caldwell*, 268 Ga. at 448 (3), n. 18 (OCGA § 7-1-812 (a) "appears to contemplate that the non-depositing party could demonstrate that a gift was intended even though the depositor would still have the right to receive the funds deposited"). The APCU joint membership agreement itself, which is also evidence of the parties intent regarding ownership of the account, provides that "all sums now invested in deposits or hereafter paid in as payments on deposits, and all interest therefrom shall be owned by us jointly." See *Daniell*, 206 Ga. App. at 381-382 (rules and regulations of bank providing that upon death of joint depositor funds on deposit would belong to the surviving party constituted evidence of deceased's intent). Finally, Howard testified that other than signing the joint membership agreement, she did not recall the joint account until after her father died. And there is no evidence that she used the account for any purpose until after her father died, and then only for the two transactions described above. These facts could negate the idea that Howard was added to the account merely for the convenience of her parents. See generally *Williamson v.*

*Echols*, 205 Ga. App. 453, 454 (1) (422 SE2d 329) (1992) (evidence that joint account was established only for the convenience of one party is evidence that the depositor did not intend to make a gift of deposited funds).

In short, there is some evidence that the parties to APCU joint account No. 6626 intended that the money in the APCU account would belong at least in part to Howard. We therefore hold that the trial court erred by concluding as a matter of law that all of the funds in account No. 6626 belonged to Leola.

3. For many of the same reasons and especially when the facts are construed in favor of Ronald for the purposes of Howard's motion for summary judgment, we conclude that the trial court did not err by denying Howard's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Boggs, J., concur.*