**In the MATTER OF: Verna A. THORNTON, Debtor.**

**CASE NUMBER 11–13222–WHD**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed March 25, 2016

George M. Geeslin, Atlanta, GA, Samuel D. Hicks, Katherine Jackson Hill, Hicks, Casey & Foster, P.C., Marietta, GA, for Debtor.

## ORDER

W. Homer Drake, U.S. Bankruptcy Court Judge

Before the Court is the Assertion of Superior Claim filed by Chuck Sylvester in the above-styled case. Sylvester contends that certain funds held by Theo D. Mann (hereinafter the "Trustee"), Chapter 7 trustee for the bankruptcy estate of Verna A. Thornton (hereinafter the "Debtor"),

belong to Sylvester and are not property of the Debtor's bankruptcy estate. This is a core proceeding, *see* 28 U.S.C. § 157(b)(2)(A), over which this Court has subject matter jurisdiction, *see* 28 U.S.C. §§ 157(a), 1337.

An evidentiary hearing regarding this matter was held on February 24, 2016, at 10:00 AM. Having considered the arguments and evidence of the parties presented at the hearing, as well as the filings in the record, the Court concludes as stated below.

### Background

In February of 2011, in anticipation of their marriage that May, Sylvester and the Debtor opened a joint bank account at Delta Community Credit Union (hereinafter "DCCU"). In August of 2011, Regina Bridges, as part of her efforts to collect a $3,241,881.87 medical malpractice judgment she had received against the Debtor, initiated a garnishment proceeding against the joint account. DCCU turned over the $6,768.78 of available funds then in the account to the State Court of Fayette County, Georgia.

On August 24, 2011, before any judgment had been entered in the garnishment proceeding or any funds distributed, Sylvester filed an Assertion of Superior Claim in the State Court. Sylvester argued that he had deposited $8,000 into the account that he had never withdrawn, so the funds remaining in the account belonged to him, not the Debtor.

The State Court held a hearing on Sylvester's assertion on September 23, 2011. At that hearing, Sylvester testified under oath that both he and the Debtor would deposit money into the account, but the Debtor was the only one who ever withdrew money from the account. Sylvester stated that the Debtor would use the mon-

ey in the account for her personal expenses, and the account's purpose "was to have a convenient place to deposit a reasonable sum of money for safekeeping and that ... she could use it, or I could use it as we may need to." Exh. Transcripts, Doc. No. 92–2, at 12–13.

On September 30, 2011, before the State Court could render a judgment on Sylvester's assertion, the Debtor filed her petition under Chapter 7 of the Bankruptcy Code.[1] As a result of the bankruptcy filing, the $6,768.78 was turned over to the Trustee on January 27, 2012. After failing to reach an agreement with the Trustee regarding the disposition of those funds, Sylvester filed the instant Assertion of Superior Claim in this Court on December 9, 2015, once again alleging that the funds belonged to him. The Trustee has opposed Sylvester's motion, contending that the funds are properly part of the Debtor's bankruptcy estate.

At the hearing on Sylvester's assertion held on February 24, 2016, Sylvester presented bank statements and deposit slips, which were admitted into evidence without objection. The deposit slips show that Sylvester made two deposits of $4,000 each into the account, one on March 25, 2011, and the other on April 6, 2011. The bank statements show other various deposits and withdrawals from February to August of 2011 for which the Debtor was responsible, including a $6,408 deposit on April 29th and a $5,000 withdrawal on May 13th. When the Court inquired as to what restrictions Sylvester had made on the Debtor's use of the joint account, Sylvester proffered that the couple's understanding had been that each of them was to deposit funds in the account to cover their own individual expenses. Hearing at 10:06, Case No. 11–13222–WHD.

---

1. 11 U.S.C. § 101 *et seq.*

## Discussion

The question for the Court to resolve in this case is whether, at the time the Debtor filed her petition, the $6,768.78 that was the subject of the garnishment proceeding belonged to Sylvester or to the Debtor. If the funds belonged to the Debtor, they became property of her bankruptcy estate when she filed her petition. Section 541(a)(1) brings into the bankruptcy estate "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). That section encompasses the interest a debtor holds in the funds in a garnished bank account. *See Bowen v. Thompson (In re Thompson)*, 2013 WL 8214644, at *1–2 (Bankr.N.D.Ga. Apr. 30, 2013) (Massey, J.); *see generally In re Eidson*, 6 B.R. 613, 615 (Bankr.N.D.Ga. 1980) (Drake, J.) (noting that as of the time of the filing of the petition for relief, "the Bankruptcy Court has exclusive jurisdiction over the property which is subject to the process of garnishment"). To determine the extent of a debtor's interest in those funds, a court should apply state law. *See In re Thompson*, 2013 WL 8214644, at *2. Because the funds at issue in this case were the subject of a garnishment proceeding under Georgia law, that law "determines the extent of the interests of any party claiming an interest in those funds." *Id.*

In Georgia, "[a] joint account belongs, during the lifetime of the parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." O.C.G.A. § 7–1–812(a). Here, the Court finds, and the parties do not dispute, that the $6,768.78 remaining is entirely made up of the remainder of Sylvester's net contributions to the account.[2] Thus, the issue is whether his intent in making his deposits was to gift those funds to the Debtor.

In determining the intent of the parties to the account, the Georgia statute "creates a presumption that a party funding a joint account does not intend to make a gift of the funds of the account during her life." *Caldwell v. Walraven*, 268 Ga. 444, 448, 490 S.E.2d 384 (1997); *accord Wallace v. McFarland (In re McFarland)*, 619 Fed.Appx. 962, 970 (11th Cir.2015) (per curiam). However, as the statute itself states, this presumption may be overcome by clear and convincing evidence of a contrary intent. *See Caldwell*, 268 Ga. at 448, 490 S.E.2d 384; *Lamb v. Thalimer Enters., Inc.*, 193 Ga.App. 70, 71, 386 S.E.2d 912 (1989).

In his argument at the February 24th hearing, the Trustee relied entirely on Sylvester's testimony in the State Court hearing regarding the Debtor's ability to withdraw money from the account for any purpose she chose. The Trustee maintained that Sylvester's testimony that only the Debtor ever withdrew funds from the account, and that the Debtor used the funds in the account for her personal expenses, showed that Sylvester must have intended his deposits into the account as gifts.

While that testimony is certainly some evidence of intent to make a gift, the Court cannot conclude that it is clear and convincing proof of such intent. To begin with, the fact that only the Debtor ever withdrew funds from the account is immaterial because the "authority to withdraw

2. *See* O.C.G.A. § 7–1–810(6) (" 'Net Contribution' of a party to a multiple party account as of any given time means the sum of all deposits thereto made by or for him, less all withdrawals made by or for him which have not been paid to or applied to the use of any other party, plus a pro rata share of any interest or dividends included in the current balance.").

funds from a joint account does not equate to ownership of the funds." *In re McFarland,* 619 Fed.Appx. at 970–71 (citing *Parker v. Kennon,* 242 Ga.App. 627, 629, 530 S.E.2d 527 (2000)). What is more, Sylvester testified at the State Court hearing that both he and the Debtor intended to make use of the account when they opened it. That he failed to withdraw funds in the relatively short time between the opening of the account in February and the initiation of the garnishment proceeding in August, on its own, is not clear and convincing evidence that he never intended to withdraw the funds he deposited.

Concerning the Debtor's ability to use the funds in the account, the Trustee's argument tracks with a recent decision of the Eleventh Circuit. In *In re McFarland,* the Eleventh Circuit was tasked with determining whether certain funds in a joint account held by a husband and wife belonged to the husband or to the wife. *See* 619 Fed.Appx. at 971. Though the wife had contributed significantly to the couple's joint account from 1968 to 1971, the husband contributed all of the funds placed in the account from 1971 to 1989. *Id.* at 970. The husband testified during the trial in the Bankruptcy Court for the Southern District of Georgia that he never placed any restrictions on his wife's use of those funds, even during the time that only he was contributing. *Id.* at 971. When asked if he had ever given his wife any indication "that she couldn't use the money that [he] earned for any purpose she decided," the husband answered, "Never." *Id.* Based on that testimony, the Eleventh Circuit concluded that the wife's "ability to spend the funds in their joint account however she desired—even for her own personal benefit only—clearly established that

the amounts deposited by [the husband] were a gift to his wife." *Id.*

Looking solely at Sylvester's testimony from the State Court hearing, the facts in *McFarland* and the instant case are very similar. However, Sylvester proffered at the hearing before this Court that he and the Debtor had an understanding that each spouse was to deposit funds into the account to cover that spouse's withdrawals from the account. The Trustee did not call the Debtor as a witness or present any other evidence suggesting that there was no such arrangement between Sylvester and the Debtor. Thus in this case, unlike the situation in *McFarland,* there is some indication that the Debtor's use of the account was subject to a limitation. Though the Debtor apparently did not abide by this limitation,[3] her use of the funds once they were in the account did not alter Sylvester's intent when he deposited them. Consequently, viewed in conjunction with everything presented to the Court, the Trustee's evidence does not clearly lead to the conclusion that Sylvester intended to make a voluntary transfer of his property to the Debtor. *See id.* at 971 (citing *Gift,* BLACK'S LAW DICTIONARY (10th ed.2014)). Therefore, the Trustee has failed to overcome the presumption that the funds belong to Sylvester.

### Conclusion

In accordance with the foregoing, it is hereby **ORDERED** that Sylvester's Assertion of Superior Claim is **GRANTED,** and the Trustee shall disburse the $6,768.78 to Sylvester.

---

**3.** Sylvester claims to have deposited $8,000 into the account and to have never made a withdrawal. Since the account's balance when the garnishment proceeding began was only $6,768.78, the Debtor must have withdrawn the difference.