**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2025**

# In the Court of Appeals of Georgia

A25A1000. IN RE: ESTATE OF FRANCES P. BAKER.

BROWN, Chief Judge.

This action commenced when Mark Robinson, who served as conservator for Frances P. Baker (the "Ward"), filed a petition for declaratory judgment seeking guidance from the probate court on the distribution of funds held in a conservatorship account. The Ward's three sons, Brooks S. Baker, Robert B. Baker, and Charles S. Baker, filed answers and counterclaims to the petition. Brooks and Robert jointly moved for summary judgment on their counterclaim, seeking a declaratory judgment that the funds were a part of the Estate of Frances P. Baker, and Charles filed a motion for partial summary judgment, seeking a declaratory judgment that the funds were a non-probate asset and belonged to him due to the Ward's designation of him as sole

beneficiary of the account. The probate court ruled in favor of Charles Baker. Kerri Beisser Baker (the "Appellant"), as special administrator of the Estate of Brooks S. Baker,[1] appeals the probate court's grant of summary judgment to Charles. Because we find no error, we affirm.

"On appeal from the grant of summary judgment, appellate courts conduct a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation omitted.) *Howard v. Leonard*, 330 Ga. App. 331, 332 (765 SE2d 466) (2014). So viewed, the Ward executed a Last Will and Testament (the "Will") in 1997, which divided her estate equally among her three sons, except for her home. Item III of the Will gave Charles the right of first refusal to purchase the home from her estate provided he compensated each of his brothers with one-third of the value of the property.[2] On or about October 25, 2001, the Ward executed a First Codicil to

---

[1] Brooks died in May 2023. Kerri Baker, Brooks' wife and the administrator of his estate, filed a suggestion of death and motion to substitute the Estate of Brooks S. Baker as a party in the case.

[2] The Will is not included in the instant record but is referenced in the petition for declaratory judgment as a part of the official record in the probate case.

her Will, deleting Item III and bequeathing her home and any other property she may own at the time of her death to Charles.

On or about August 19, 2014, the Ward named Charles as the sole beneficiary of an investment account she owned at Charles Schwab. The form used to do so explained as follows: "Designated Beneficiary Plan (the "Plan") is the term Schwab uses for its Plan that enables clients to add beneficiaries and is commonly referred to as a Transfer on Death (TOD) in the securities industry and Payable on Death (POD) in the banking industry." On or about October 2, 2016, a new beneficiary designation form, purportedly signed by the Ward, was submitted to Charles Schwab, which revoked the existing plan and listed the Ward as the account holder with no beneficiary. Charles maintained that Brooks and Robert submitted this form and forged their mother's signature.[3] On or about October 17, 2016, the Ward allegedly learned of the beneficiary revocation on the account, closed the account, and transferred the assets therein to a different account, designating Charles as the sole

---

[3] Attorney Terri M. Lyndall averred that she prepared the Ward's Will and has known the Ward's sons for over 20 years. Lyndall also averred that she served as the executive secretary of the Georgia Public Service Commission where Robert served as a commissioner, that she was familiar with his handwriting, and that the October 2 change of beneficiary form contained his handwriting.

beneficiary. On or about October 20, 2016, the Ward directed Charles Schwab to move the funds to yet a different account and signed another beneficiary designation form, again naming Charles as the beneficiary (the "current Schwab Account"). Robert and Brooks alleged that the Ward did not consent to this change to her account.

In June 2017, Charles filed a petition for guardianship and/or conservatorship, seeking appointment as the Ward's guardian and conservator, in which he listed the Schwab Account as valued at $580,244.00. Robert and Brooks filed a motion to intervene/objection to Charles' petition, seeking the appointment of Robert as the guardian. After a court-appointed evaluator concluded that the Ward was incapacitated due to dementia, the probate court appointed an attorney to represent her. Counsel then filed a petition for the appointment of a guardian ad litem. On November 30, 2017, the probate court entered an order appointing Charles as guardian and County Conservator Mark Robinson as the conservator of the estate.

On or about December 12, 2017, Robinson requested that Charles Schwab transfer the current Schwab Account funds in-kind into a conservatorship account at Edward Jones (the "EJ Account"). The Schwab Account statement from November

2017 identified the account as "Frances P Baker, Designated Bene Plan/TOD" and had a balance of $671,914.23 at that time. On January 26, 2018, Robinson filed an Adult Conservatorship Inventory and Asset Management Plan ("IAMP") in which he stated that he "anticipate[d] reallocating the Ward's investments, because some of her stock holdings are too risky and volatile for a person of the Ward's age," which the probate court approved on August 31, 2018. Charles denied receiving the IAMP, which the court found immaterial. Robinson filed another IAMP listing the EJ Account as an asset on December 14, 2018. The statement regarding the reallocation of assets was also included in the second IAMP.[4] The Ward died testate on March 15, 2019. On October 16, 2019, Brooks filed a petition to probate the Ward's Will and the First Codicil and sought the appointment of a county administrator as administrator of the estate.

On June 7, 2022, Robinson filed the instant petition for declaratory judgment, seeking direction regarding the disposition of the EJ Account, specifically, whether the funds should be disbursed to Charles or to the Estate of Frances Baker. Robert and Brooks filed an answer and counterclaim, seeking payment of the funds to the estate.

---

[4] Robinson filed additional IAMPs on December 8, 2020 and December 20, 2021, both of which reflected that the petition to probate the will was still pending.

Charles filed an answer and counterclaim, seeking a judgment that he was the rightful owner of the funds in the EJ Account and attorney fees against Robinson because he had failed to disburse the funds to Charles upon request. Charles also opposed Robert and Brooks' counterclaim.

Robert and Brooks moved for summary judgment, arguing that Robinson's transfer of funds to the EJ Account severed its POD designation and that Charles waived any claim to the funds due to his failure to object to the IAMPs and the annual returns that listed the account as an asset. Robinson responded, asserting his position as an indifferent stakeholder and seeking direction from the court. Charles opposed the motion, arguing that it should be denied as a matter of law because Robinson failed to comply with Georgia law and lacked the authority to engage in estate planning. Charles maintained that the account at issue was a non-probate asset and that Robinson failed to take the Ward's beneficiary designation into account when he transferred the assets to the EJ Account. Charles also filed a cross-motion for partial summary judgment, asserting the same argument.

The probate court granted partial summary judgment to Charles and denied Robert and Brooks' motion for summary judgment. The court ordered the payment

of the funds to Charles, finding that the Schwab account was a POD account, that Robinson did not seek authority from the court to engage in estate planning when he transferred the account to Edward Jones with no designated beneficiary, and that Charles did not waive any claims because the IAMPs did not disclose the removal of the beneficiary designation when the funds were transferred to Edward Jones.[5] Appellant appeals the grant of partial summary judgment to Charles.

1. Appellant argues that the probate court erred when it mischaracterized the routine action of transferring funds as estate planning and ignored Robinson's fiduciary duties under OCGA § 29-5-22. We find no error in the probate court's ruling.

In addressing Appellant's arguments, we consider the statutes that govern a conservator's obligations and authority, as well as those governing estate planning for wards. First, OCGA § 29-5-22 governs the obligations and liabilities of the conservator and provides, in pertinent part:

> a conservator shall receive, collect, and make decisions regarding the ward's property. A conservator shall, to the extent feasible, encourage the ward to participate in decisions, act on the ward's own behalf, and

---

[5] The court's order also denied Robert and Brooks' counterclaim.

develop or regain the ability to manage the ward's property. A conservator, in making decisions, *shall consider the expressed desires and personal values of the ward* which are known to the conservator. A conservator shall at all times act as a fiduciary in the ward's best interest and exercise reasonable care, diligence, and prudence.

(Emphasis added.) OCGA § 29-5-22 (a). OCGA § 29-5-22 (b) (8) provides that a conservator shall "[t]ake into account any estate plan of the ward known to the conservator in the administration of the conservatorship." Next, OCGA § 29-5-23 explains the conservator's authority and provides, in relevant part:

(a) Unless inconsistent with the terms of any court order relating to the conservatorship, a conservator *without court order* may:

(1) Make reasonable disbursements from the annual income or, if applicable, from the annual budget amount that has been approved by the court pursuant to Code Section 29-5-30 for the support, care, education, health, and welfare of the ward and those persons who are entitled to be supported by the ward; . . .

(4) Receive, collect, and hold the ward's property, additions to the ward's property, and all related records;

(5) Retain the property received by the conservator upon the creation of the conservatorship in accordance with the provisions of Code Section 29-5-31; . . .

(7) Fulfill, as far as possible, or, to the extent permitted by law, disaffirm the executory contracts and comply with the executed contracts of the ward; . . . [and]

(9) Examine the will and any other estate planning documents of the ward . . . [.]

(Emphasis added.) Finally, OCGA § 29-5-36 (b) governs estate planning for wards and provides:

After notice to interested parties and other persons as the court may direct, and upon a showing that the ward will probably remain in need of a conservator throughout the ward's lifetime and that it is in the best interest of the ward, *the court may order the conservator to* apply such principal or income of the ward as is not required for the support, care, education, health, and welfare of the ward and such individuals who are entitled to support from the ward toward the establishment or continuation of an estate plan for the ward and *make transfers of the ward's personal or real property, outright or in trust, provided that the court finds that a competent, reasonable person in the ward's circumstances would make such transfers and there is no evidence that the ward, if not in need of a conservator, would not adopt such an estate plan.*

(Emphasis added.) OCGA § 29-5-36 (a). OCGA § 29-5-36 also explains what the court should consider prior to authorizing such transfers, to wit: "(4) The purpose and estate planning benefit to be derived by the transfer as well as the possible harm to any interested party; and (5) *Any previous history or predisposition toward making similar transfers by the ward.*" (Emphasis added.)

Each of these statutes contemplates consideration of the ward's wishes. In this case, the Ward named Charles as the sole POD beneficiary on the first Schwab account in 2014, long before she was declared mentally incapacitated due to dementia in July 2017. Upon learning that the beneficiary designation had been revoked on the account, she closed the account and opened another, again naming Charles as the sole beneficiary. While the parties offer different versions of how the latter beneficiary designation came to be, the evidence submitted, Charles' affidavit, reflects that he was named sole beneficiary on the account, which was a POD account. Additionally, the Schwab Account statement from November 2017, the month before Robinson transferred the funds, showed on its face that the account had a beneficiary designation and was a transfer on death account. Although Brooks and Robert disputed that the October 20, 2016 beneficiary designation form reflected the Ward's

intent, they offered no actual evidence in opposition to Charles' affidavit. As nonmovants, they could not rest on their pleadings but were required to point to specific evidence giving rise to a triable issue. See *Handberry v. Manning Forestry Svcs.*, 353 Ga. App. 150, 152 (836 SE2d 545) (2019). "[S]peculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." (Citations and punctuation omitted.) Id.

Next, we turn to the question of whether the transfer of the funds constituted estate planning, noting that both Appellant and Robinson maintain that it did not and was simply a fiduciary-driven routine administrative task. As noted earlier, OCGA § 29-5-36 (a) provides, in pertinent part, that

> the court may order the conservator to apply such principal or income of the ward as is not required for the support, care, education, health, and welfare of the ward . . . toward the establishment or continuation of an estate plan for the ward and make transfers of the ward's personal or real property, . . . , *provided that the court finds that a competent, reasonable person in the ward's circumstances would make such transfers and there is no evidence that the ward, if not in need of a conservator, would not adopt such an estate plan.*

(Emphasis added.) Because the evidence establishes that the Ward designated Charles as the sole beneficiary of the Schwab Account, we cannot find that she would have adopted a plan that removed him as the beneficiary. Thus, when Robinson moved the funds to the EJ Account without the POD designation, he was engaging in estate planning that contradicted the Ward's wishes. While OCGA § 29-5-23 (c) (11) permits a court to grant a conservator the power to engage in estate planning for the ward under certain circumstances, the record is void of a petition filed by Robinson seeking this authority. According to the probate court's order, Robinson represented that he did not have the Ward's will nor did he know of the POD designation until after she died, but as stated earlier, the Schwab Account statement shows on its face that it had a beneficiary designation and was a "TOD" or transfer on death account.

Citing no case law, Appellant summarily argues that Robinson complied with OCGA § § 29-5-22 and 29-5-23 because the purpose of the transfer was to streamline assets and reduce investment risks and the account's value increased to more than $812,000 by the end of 2021. The growth of the account has no bearing on Robinson's duty to take into account the Ward's wishes. Robinson cites *Suntrust Bank, Middle Ga., N. A. v. Harper*, 250 Ga. App. 300 (551 SE2d 419) (2001) in support of his

12

argument that he did not engage in estate planning. However, this case does not warrant the reversal of the probate court's ruling. There, we held that an incapacitated person could not change the beneficiary on an IRA because he lacked the power to contract. Id. at 304-305. In the instant case, the POD designation was made well before the Ward was declared incapacitated due to dementia. Notably, however, we explained in *Harper* that the IRA designation could not be changed via last will and testament, as it was governed by the agreement with the bank and the principles of contract law. Id. at 305. Similarly, here, the POD designation was an agreement with Schwab that could not be altered by the Will or by Robinson's actions, as it was separate from the estate. Robinson also argues that there was no evidence that connected the beneficiary designation form to the account at issue, but Charles' affidavit that he was the POD beneficiary of the account was not controverted, and the form listed Charles as the beneficiary. Thus, the probate court did not err in concluding that the transfer constituted unauthorized estate planning.

2. Appellant argues that factual disputes exist such as whether Robinson knowingly revoked the POD designation or assumed there was no beneficiary on the Schwab account, but this argument does not preclude summary judgment in Charles'

favor. First, the Schwab Account statement, on its face, had a beneficiary designation. Second, the pertinent issue is one of law; i. e., did the transfer of funds void the designation put in place by the Ward, which was the argument advanced by Robert and Brooks in their motion. We find that it did not, particularly in light of our holding in Division 1 that the transfer constituted unauthorized estate planning.

OCGA § 7-1-813, which governs rights of survivorship in banking and finance, provides in pertinent part: "If the account is a P.O.D. account, on death of the original payee or of the survivor of two or more original payees, any sums remaining on deposit belong to the P.O.D. payee[.]" OCGA § 7-1-813 (b). See *Godwin v. Johnson*, 197 Ga. App. 829, 830-831 (1) (399 SE2d 581) (1990) (sums remaining on deposit at death of party to joint account belong to surviving party, not estate of decedent, unless there is clear and convincing evidence of different intent when account is created). See generally *King v. Travelers Ins. Co.*, 202 Ga. App. 568, 569 (415 SE2d 176) (1992) (life insurance proceeds vest in named beneficiary and are not part of estate). Brooks and Robert argued that OCGA § 7-1-814, which provides that the terms of a multi-party account can be changed by closing the account and reopening it, supports their argument that the POD designation was voided when the Ward closed the first

14

account. But the account at issue was not a multi-party account, which renders OCGA § 7-1-814 inapplicable. The Schwab Account at issue was a POD account that named Charles as the sole beneficiary, and Robinson was not authorized to transfer the funds and ignore the Ward's intent.

Appellant also argues that a genuine issue of fact remains as to whether Charles' failure to object to the IAMP filings constituted a waiver of his claim under OCGA § 29-5-60, but this argument also lacks merit. OCGA § 29-5-60 (c) states as follows:

> The court shall carefully examine each return of a conservator and, upon petition of any interested person or upon the court's own motion, may require the conservator to produce the original documents that support the return. Except as otherwise provided in this subsection, *if no objection is filed within 30 days of the time the return is filed, the court shall record the return within 60 days of its filing. The return shall be kept on file in the court. The recorded return shall be prima-facie evidence of its correctness.* If there is an objection to the return or if the court on its own motion determines that the conservator may have wasted the property of the ward or failed in any manner to comply with applicable law, the court shall hold a hearing or take such other action as the court deems appropriate.

(Emphasis added.) As the probate court noted in its order, Robinson's IAMPs did not disclose the fact that the beneficiary designation was removed when the funds were transferred to the EJ Account. Moreover, the statute provides that the return will be

15

deemed accurate absent an objection. It does not impose penalties against the holders of a beneficial interest in the conversatorship assets for failure to object to the return. Accordingly, we affirm the probate court's grant of partial summary judgment to Charles Baker.

*Judgment affirmed. Barnes, P. J., and Watkins, J. concur.*